# EXHIBIT A

2023 WL 1120867
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

Brian LUNDSTROM, Plaintiff,
v.
Carla YOUNG, an individual; Ligand Pharmaceuticals,
Inc.; Ligand Pharmaceuticals, Inc. 401(k)
Plan; and Does 1 through 20, Defendants.

Case No.: 18-cv-2856-GPC
|
Signed January 27, 2023
|
Filed January 30, 2023

**Attorneys and Law Firms**

Marc S. Schechter, Paul Douglas Woodard, Jr., Butterfield Schechter LLP, San Diego, CA, for Plaintiff.

David F. Kowalski, John Thomas Ryan, Latham & Watkins LLP, San Diego, CA, Elise Klein, Raul Luis Martinez, Lewis Brisbois Bisgaard and Smith, Los Angeles, CA, Nicole C. Valco, Latham & Watkins, San Francisco, CA, for Defendants Ligand Pharmaceuticals, Inc., Ligand Pharmaceuticals, Inc. 401(k) Plan.

**ORDER GRANTING DEFENDANT YOUNG'S MOTION FOR ATTORNEYS' FEES AND COSTS**

**[ECF No. 123]**

Gonzalo P. Curiel, United States District Judge

**\*1** On November 10, 2022, Defendant Carla Young ("Defendant" or "Young") filed a Motion for Attorneys' Fees. ECF No. 123. On December 28, 2022, Plaintiff Brian Lundstrom ("Plaintiff" or "Lundstrom") filed an Opposition. ECF No. 140. On January 10, 2023, Young filed a Reply. ECF No. 141. For the reasons below, the Court **GRANTS** Defendant Young's Motion for Attorneys' Fees and Costs under 29 U.S.C. § 1132(g).

**FACTUAL BACKGROUND**

The facts of this matter are well known to all parties involved. The Court briefly recounts the history of this litigation as it pertains to Defendant Young.

Plaintiff and Defendant Young married on or around August 21, 1998 in Seattle, Washington and divorced on July 30, 2014 in Texas. ECF No. 92 ("SAC") ¶¶ 16, 18. On July 30, 2014, a Decree was signed that divided all marital property. *Id.* ¶ 18. On January 8, 2016, Plaintiff began employment with Ligand Pharmaceuticals ("Ligand") and commenced participation in the Ligand 401(k) Plan on or about April 1, 2016. *Id.* ¶¶ 19, 23. Further, as part of his compensation, Ligand granted Plaintiff 18,010 stock options. *Id.* ¶ 26. Both the 401(k) Plan account and the stock options are at issue.

In his Second Amended Complaint ("SAC"), Plaintiff alleged that Defendant Young and law firm KoonsFuller "surreptitiously" prepared a document purporting to be a qualified domestic relations order ("QDRO") seeking transfer of all the benefits in Plaintiff's 401(k) Plan account (the "401(k) QDRO") to Defendant Young. *Id.* ¶ 30. Plaintiff alleged he was not notified the 401(k) QDRO was submitted to the Texas court and was not given an opportunity to review, approve, or contest the validity of the Order. *Id.* ¶¶ 32-34.

As to the stock options, Plaintiff made similar allegations. He alleged that Young and KoonsFuller prepared a document purporting to be a domestic relations order seeking transfer of the 18,010 stock options from Plaintiff to Defendant Young (the "Stock DRO"). *Id.* ¶ 39. Plaintiff states he was not given notice and thus not given an opportunity to review, approve, or contest the validity of the Stock DRO. *Id.* ¶¶ 40-44.

**PROCEDURAL BACKGROUND**

On December 20, 2018, Plaintiff filed his initial Complaint in this Court. ECF No. 1. On April 8, 2019, Plaintiff filed a Motion for Leave to file a first amended complaint, (ECF No. 17), which the Court granted, (ECF No. 41). Plaintiff's First Amended Complaint ("FAC") alleged five causes of action against Defendant Young. ECF No. 45. Defendant Young filed a Motion to Dismiss, (ECF No. 46), and the Court granted Young's Motion, (ECF No. 64). The Court held that the *Rooker-Feldman* doctrine barred the federal claims and declined to exercise supplemental jurisdiction over the remaining state law claims. ECF No. 64 at 21, 25. [1]

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 1

Case 1:24-cv-12058-IT    Document 38-1    Filed 10/22/24    Page 3 of 7

Lundstrom v. Young, Not Reported in Fed. Supp. (2023)

Lundstrom appealed to the Ninth Circuit. ECF No. 68. The Ninth Circuit affirmed in part and reversed in part this Court's Order. ECF No. 79. Specifically, the Ninth Circuit held *Rooker-Feldman* did not bar all of Plaintiff's federal claims and on remand, instructed this Court "to consider any other defenses, including claim and issue preclusion, in the first instance." *Id.* at 6.

**\*2** On May 25, 2022, Plaintiff filed his SAC. ECF No. 92. Plaintiff's SAC alleged five causes of action as to Defendant Young: (1) unjust enrichment; (2) conversion; (3) equitable and injunctive relief under ERISA; (4) equitable and injunctive relief under state law; and (5) breach of contract as intended third-party beneficiary. *Id.* ¶¶ 125-176. Defendant Young filed a Motion to Dismiss the SAC. ECF No. 97. Plaintiff conceded dismissal of the breach of contract claim. ECF No. 120 at 32-33. In its October 27, 2022 Order, the Court dismissed the four remaining claims against Defendant Young finding them barred by collateral estoppel. *Id.* at 19. The four claims necessarily relied on arguments that were considered and rejected by Texas state courts. *Id.*

## LEGAL STANDARDS

29 U.S.C. § 1132(g)(1) states that in an ERISA action, a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Although a fee claimant does not need to be a prevailing party to be awarded fees pursuant to § 1132(g)(1) "a fee claimant must show 'some degree of success on the merits.' " *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1120 (9th Cir. 2010) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 244 (2010)). A "trivial success on the merits" or a "purely procedural victory" does not satisfy this requirement. *Id.* Only after a court determines that the fee claimant achieved "some degree of success on the merits" can the district court grant attorneys' fees. *Id.* at 1121.

After a party has demonstrated success on the merits, a district court must consider five factors to determine if an award of fees under ERISA is appropriate: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits

of the parties' positions. *Hummel v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980). A district court must consider these factors before awarding fees pursuant to § 1132(g)(1). *Simonia*, 608 F.3d at 1122 ("In order to grant fees under 29 U.S.C. § 1132(g)(1), courts must first determine whether a litigant has achieved some degree of success on the merits. If so, courts must then determine whether the *Hummell* factors weigh in favor of awarding that litigant attorney's fees. Only if both of these conditions are met may a district court award fees.").

If the court determines an award of attorneys' fees is warranted, the court must then decide what amount is reasonable. The Ninth Circuit "has adopted the hybrid lodestar/multiplier approach used by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), as the proper method for determining the amount of attorney's fees in ERISA actions." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). The Court must first determine the lodestar amount by multiplying the number of hours expended by the hourly rate(s). *Id.* The fee claimant "must submit evidence supporting the hours worked and the rates claimed." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A district court should pay close attention and "exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.' " *Id.* (citing *Hensley*, 461 U.S. at 434). A court may adjust the lodestar amount using a "multiplier" based on other factors not considered in the initial calculation. *Id.* A multiplier should only be used in "rare and exceptional cases" where the "lodestar amount is unreasonably low or unreasonably high." *Id.*

## DISCUSSION

### I. Timeliness of Young's Fee Request

**\*3** As a threshold matter, Plaintiff argues that Defendant Young's Motion for Attorneys' Fees is premature because a final judgment has not been entered as to all claims and Defendants. ECF No. 138 at 7-8. Following the Court's Order granting in part and denying in part Defendant Ligand's Motion to Dismiss, a few claims remain pending against Ligand. *See* ECF No. 120. Plaintiff argues that *Auke Bay Concerned Citizen's Advisory Council v. Marsh*, 779 F.2d 1391 (9th Cir. 1986), requires there to be entry of final judgment prior to an application for attorneys' fees. ECF No. 138 at 8 (citing *Auke Bay Concerned Citizen's Advisory Council v. Marsh*, 779 F.2d 1391, 1393 (9th Cir. 1986) ("[A]n

Case 1:24-cv-12058-IT   Document 38-1   Filed 10/22/24   Page 4 of 7

Lundstrom v. Young, Not Reported in Fed. Supp. (2023)

application for attorney fees under 28 U.S.C. § 2412(d) is timely only if (1) the applicant files no more than 30 days after final judgment, and (2) the applicant is able to show that he or she 'is a prevailing party and is eligible to receive an award under this subsection.' ")).

Defendant Young responds that final judgment is not required prior to a timely application for attorneys' fees. ECF No. 141 at 5. Young argues that the Ninth Circuit in *Auke Bay* granted the Plaintiff's request for interim attorneys' fees because it found the district court "substantially grant[ed] the applicant's remedy" even though final judgment had not yet been entered. *Id.* (quoting *Auke Bay,* 779 F.2d at 1393 (stating Equal Access to Justice Act allows attorneys' fee award when "a court order substantially grants the applicant's remedy before final judgment is entered")). *Auke Bay* explains that the main concern behind the decision to grant an interim award of attorneys' fees is whether it can be properly determined if the fee claimant has "prevailed." *Auke Bay,* 779 F.2d at 1393 (stating that allowing a fee award before the applicant's remedy is substantially granted means the "applicant would be unable to show that he or she had prevailed").

The Court finds that Defendant Young's application for attorneys' fees is timely. First, *Auke Bay* provides what is in effect a statute of limitations for filing a motion for attorneys' fees. *Auke Bay* states that a motion is timely "only if ... the applicant files no more than 30 days after final judgment." *Id.* This does not imply that an attorneys' fees motion can only be filed once there is a final judgment; it simply implies the maximum time limit for filing a motion for attorneys' fees is 30 days after final judgment. *See also id.* (stating the statute "establishes a clear date *after which* applications for attorney fees must be rejected as untimely" but the statute is "less clear about a time *before which* applications must be rejected"). Further, as a general matter, interim awards of attorneys' fees under ERISA are not precluded in this Circuit. *See Kayes v. Pacific Lumber Co.*, 51 F.3d 1149, 1469 (9th Cir. 1995) (holding that "interim attorney's fees are available under ERISA to the extent that they are available under civil rights statutes").

**II. Success on the Merits**

District courts must determine whether an ERISA fee claimant has achieved "some degree of success on the merits" before granting fees under the statute. *Simonia*, 608 F.3d at 1119. This success must be more than "trivial" or a "purely procedural victory." *Id.* at 1120. A claimant can satisfy this requirement "if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue.' " *Hardt.*, 560 U.S. at 255 (quoting *Ruckelshaus v. Sierra Club*, 564 U.S. 680, 688 (1983)).

Plaintiff does not dispute that Young has achieved "some success on the merits." This Court dismissed every cause of action against Defendant Young. *See generally* ECF No. 120. Young's success clearly was not "trivial" and was not purely procedural. The Court finds this requirement met.

**III.** *Hummel* **Factors**

**\*4** After determining that a fee claimant has achieve a degree of success on the merits, a district court must consider the *Hummel* factors prior to awarding fees. *Simonia*, 608 F.3d at 1119. The factors are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Id.* at 1121. Although these factors should guide a district court's discretion, no one factor is determinative. *Credit Managers Ass'n of S. Cal. v. Kennesaw Life and Accident Ins. Co.*, 25 F.3d 743, 749 (9th Cir. 1994). After considering these factors, the Court GRANTS Defendant Young's Motion.

The first factor weighs in favor of granting Defendant Young's Motion. Although bad faith is not proven simply because Lundstrom did not succeed on his claims against Young, there is evidence this litigation was commenced and carried out in bad faith. At their core, all of Plaintiff's claims against Defendant Young were that Young "is in wrongful possession of [Plaintiff's] assets for reasons including that the orders are an improper division of post-marital assets and that Plaintiff lacked notice and therefore due process as to the signing of the orders." ECF No. 120 at 18. Plaintiff raised these arguments in Texas courts, and his arguments were consistently rejected. He continues to make these identical arguments at great expense to judicial resources.

Further, it is not clear to the Court why Plaintiff did not attempt to modify the 401(k) QDRO or Stock DRO before the Texas courts in the first instance. Plaintiff argues it is because he "was never notified about the QDRO or the

Case 1:24-cv-12058-IT    Document 38-1    Filed 10/22/24    Page 5 of 7

Lundstrom v. Young, Not Reported in Fed. Supp. (2023)

Stock DRO prior to the Texas Court's issuance." ECF No. 138 at 10. Whether Plaintiff received notice of the 401(k) QDRO and Stock DRO has been a point of contention throughout this litigation. However, it appears indisputable that Plaintiff received notice of the Texas court hearings pertaining to these Orders. ECF No. 113-1 at 10 (quoting from oral argument before this Court in which Plaintiff's counsel admitted Plaintiff had notice of the Texas court hearing authorizing the QDRO). Once pressed on this fact, Plaintiff clarified that his argument is actually that he did not receive notice the orders were *submitted to the Texas court for signature*. ECF No. 117 at 10. There was a subsequent question of law as to whether notice of the *signing* of the Orders was required under Texas law or the United States Constitution. *See* ECF No. 122 at 4. Nevertheless, even in his Response to the present Motion, Plaintiff continues to edge dangerously close to making misrepresentations to the Court. It is not true, as Plaintiff argues, that he "was never notified about the QDRO or Stock DRO prior to the Texas Court's issuance." ECF No. 138 at 10. He was notified that a hearing would take place concerning his unpaid child support and that he had the right to be heard at such hearing. He did not take advantage of this right. He cannot continue to argue that he lacked complete notice. Plaintiff's relentless litigation on matters decided by Texas state courts and his inadvertent, or perhaps intentional, misrepresentations before this Court weigh in favor of awarding Defendant Young attorneys' fees.

The second factor, ability to pay, also favors an award of attorneys' fees. Plaintiff does not argue his inability to pay as much as he argues Young has not met her burden to prove he is able to pay. ECF No. 138 at 11-12. The Court disagrees. Young presents evidence of many years of Plaintiff's six-figure salary as well as the equity he received from various companies. *See* ECF No. 123-2 ("Young Decl."). This factor weighs in favor of awarding fees.

 **\*5**  The third factor, whether a fee award would deter the opposing party from acting under similar circumstances, similarly weighs in favor of fees. The third factor "is generally aimed at protecting participants in employee benefit plans against the abuses or administrative failures of the plan." *Honolulu Joint Apprenticeship and Training Comm. of United Ass'n Loc. Union No. 675 v. Foster*, 186 F. Supp. 2d 1114, 1122 (D. Haw. 2001). This is not a case in which a plan beneficiary is suing a plan administrator to hold them accountable. *See e.g., Mull v. Motion Picture Indus. Health Plan*, 2017 WL 748980, at \*8 (C.D. Cal. Feb. 27, 2017)

(awarding fees to deter ERISA administrators from only enforcing selective provisions).

While Lundstrom may seek protection against alleged abuses by Ligand, the Court has found that there was no basis for him to make an ERISA claim against Young. Defendant Young and Plaintiff Lundstrom are ex-spouses who have been involved a contentious dissolution and child support proceedings. An ERISA suit against Young attempted to revisit rulings made by the Texas courts and needlessly prolonged the proceedings against her. An attorneys' fee award in this action would deter an ex-spouse from challenging the validity of a state court order in federal court on superficial ERISA grounds. Although Plaintiff's action is not the typical ERISA action brought against a plan administrator, the Court finds this type of action is worth deterring. The Court does not want to swing the doors of federal court wide open for actions between aggrieved spouses that belong in state court and, as in this action, actually were decided in state court many years ago. The Court rejects the use of ERISA as a means for ex-spouses to drag each other through endless litigation in federal court at great expense to all involved. Thus, this factor weighs in favor of granting Defendant Young fees.

The fourth factor weighs against granting Young's Motion. Young is the party requesting fees, and she did not intend to benefit all participants of an ERISA plan or to resolve a significant legal question regarding ERISA. Young's intent was to defend the action against herself and prove she was not in wrongful possession of Plaintiff's assets. Her collateral estoppel defense does not benefit any other participants. Further, this factor is likely to weigh against an award of attorneys' fees when the action is not between individual plan beneficiaries and "institutional litigants." *Tingey v. Pixley-Richards West, Inc.*, 958 F.2d 908, 910 (9th Cir. 1992). Thus, the fourth factor cuts against Defendant Young's request.

The fifth factor as to the relative merits of the parties' positions also weigh in favor of granting Young fees. The Court granted Young's Motion to Dismiss in its entirety and did not rule in Plaintiff's favor on any issue relating to Defendant Young. *See generally* ECF No. 120. Although the Court engaged in a rigorous analysis regarding the application of collateral estoppel and whether the issues raised in this action were fully and fairly litigated in the Texas courts, the analysis was relatively straightforward. Every argument advanced on how Defendant Young was in wrongful possession of Plaintiff's assets had been presented

Case 1:24-cv-12058-IT   Document 38-1   Filed 10/22/24   Page 6 of 7

Lundstrom v. Young, Not Reported in Fed. Supp. (2023)

to, and uniformly rejected by, the Texas courts. *See id.* at 16-19. For these reasons, the fifth factor supports an award of attorneys' fees.

After considering the *Hummel* factors, the Court finds all but the fourth factor weigh in favor of Defendant Young's Motion. As a result, the Court GRANTS her request for attorneys' fees.

### IV. Award Amount

**\*6** The Court must now determine the appropriate amount of Young's award. The Ninth Circuit "has adopted the hybrid lodestar/multiplier approach used by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), as the proper method for determining the amount of attorney's fees in ERISA actions." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). The Court must first determine the lodestar amount by multiplying the number of hours expended by the hourly rate(s). *Id.* The fee claimant "must submit evidence supporting the hours worked and the rates claimed." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Young requests $135,234.20 for a total of 263.32 hours of work. ECF No. 123-1 at 18. Young states that she requests "reasonable, and reduced fees to the Court" because she "did not include any fees directly related to Lundstrom's appeal, Young's petition to the Supreme Court of the United States, or Young's two motions for sanctions which were denied by this Court." *Id.* Young claims she "only seeks fees directly and indirectly related to the defense of this matter and achieving the success on the merits which resulted in the complete dismissal of all claims against her." *Id.* Defendant Young's attorney submitted a billing summary. *See* ECF No. 123-5 (Exh. A to Barnes Decl.).

Lundstrom challenges the amount of attorney fees sought on the basis that the fees are unreasonable because Young's attorney is an employment attorney and has not provided a prevailing rate for attorneys specializing in ERISA cases. Given that ERISA involves employment retirement rights, the Court finds that attorney fees for employment attorneys provide a proper fit in determining a reasonable hourly rate in this case. Lundstrom also argues that the attorney fees are excessive because, of the five claims against Ms. Young, only one was an ERISA claim and counsel has failed to break out the amount of work performed on the ERISA claim.

The Court finds that the ERISA claim and the state law claims are inextricably intertwined. The Court has previously observed that, at their core, all of Plaintiff's claims asserted that Young "is in wrongful possession of [Plaintiff's] assets for reasons including that the orders are an improper division of post-marital assets and that Plaintiff lacked notice and therefore due process as to the signing of the orders." ECF No. 120 at 18. Given that the core issues overlap, the attorney hours devoted to challenging the non-ERISA claims were required to defend the ERISA cause of action.

However, the Court reduces the amount requested by 50% to reflect the degree of success Defendant Young has achieved throughout the course of this litigation. *See Aguirre v. Los Angeles United School Dist.*, 461 F.3d 1114, 1118 (9th Cir. 2006) (citing *Hensley*, 461 U.S. at 430 (stating that the level of success is "relevant to the amount of fees to be awarded")). The district court has discretion to reduce a requested fee award, and "[t]here is no precise rule or formula" to determine an appropriate reduction. *Hensley*, 461 U.S. at 436. A court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37.

Although this Court dismissed all claims against Defendant Young, not all of Defendant Young's arguments raised throughout the course of this four-year litigation were successful and relevant to her ultimate success on collateral estoppel grounds. For example, fees expended in relation to the *Rooker-Feldman* doctrine are not fairly recoverable because the Ninth Circuit reversed this Court's ruling in part after finding *Rooker-Feldman* did not bar the majority of Plaintiff's claims against Defendant Young. Fees devoted to issues such as personal jurisdiction, venue transfer, subject matter jurisdiction, and sanctions are also not recoverable because Defendant Young did not achieve success on these grounds. *See e.g.*, ECF No. 123-5 at 3 ("Finalize initial legal analysis of procedural defenses based upon subject matter and personal jurisdiction" and "[e]xchange e-correspondence with Mr. Barnes regarding application of Rooker-Feldman Doctrine"); *id.* at 5 ("Draft legal arguments for Rooker-Feldman and personal jurisdiction"); *id.* at 27 ("Continue drafting procedural and factual background to motion to transfer").

**\*7** After reviewing the billing summary submitted as Exhibit A to Brook Barnes's Declaration, (ECF No. 123-5), the Court concludes the appropriate amount of attorneys' fees in this action is the requested amount, $135,234.20, multiplied by

50%, or **$67,617.10**. This reflects the approximate amount of fees expended on the successful collateral estoppel defense. In addition, costs in the requested amount of **$1,246.58** are also recoverable.

**CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant Young's Motion for Attorneys' Fees in the amount of **$67,617.10** and costs in the amount of **$1,246.58**.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 1120867

---

**Footnotes**

1       The page citations refer to CM/ECF pagination.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.