**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASON WENTZ, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>MODERNA, INC., STÉPHANE BANCEL, JAMES M. MOCK, and STEPHEN HOGE,<br><br>　　　　　　　Defendants. | Case No. 1:24-cv-12058-IT<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
<u>**MOTION TO STRIKE CERTAIN EXHIBITS**</u>

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES......................................................................................................... iii

PRELIMINARY STATEMENT...................................................................................................1

ARGUMENT ................................................................................................................................3

I.      RELEVANT LEGAL FRAMEWORK ...........................................................................3

        A.      Incorporation by Reference.................................................................................3

        B.      Judicial Notice ....................................................................................................5

II.     THIS COURT MAY CONSIDER THE CHALLENGED EXHIBITS..............................6

        A.      The FDA's January 25 IR #19 Email (Ex.20) and Moderna's
                February 26 Response (Ex.21) Are Referenced in, and
                Integral to, the Amended Complaint and May Be Considered
                for What They Undisputedly Say.........................................................................6

        B.      Moderna's March 12 Submission (Ex.22) Is Integral
                to the Amended Complaint and May Be Considered for
                What It Undisputedly Says .................................................................................10

        C.      The ConquerRSV Documents (Exs.17-19, 34-35)
                Are Referenced in, and/or Integral to, the Amended Complaint
                and May Be Considered for What They Undisputedly Say..................................12

        D.      The Court May Take Judicial Notice of Two Facts in
                FDA Clinical Review Memoranda Regarding GSK's
                Arexvy (Ex.32) and Pfizer's Abrysvo (Ex.33)......................................................14

        E.      The Court May Take Judicial Notice of the FDA's Guidance
                E6(R3) Good Clinical Practice (Ex.37) ...............................................................15

        F.      The Court May Take Judicial Notice of the CDC's Parity
                Recommendation (Ex.36) ...................................................................................16

        G.      Annex A to Defendants' Memorandum of Law Supporting Their
                Motion to Dismiss (Ex.41) Is Properly Before the Court .....................................17

i

III.    PLAINTIFF HAS NOT PLEADED FACTS TO JUSTIFY DISCOVERY........................17

CONCLUSION..................................................................................................................................18

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abely v. Aeterna Zentaris*,
 2013 WL 2399869 (S.D.N.Y. May 29, 2013) .........................................................................13

*Alternative Energy v. St. Paul Fire & Marine Ins.*,
 267 F.3d 30 (1st Cir. 2001).......................................................................................................6

*In re Apellis Pharms. Sec. Litig.*,
 2025 WL 836491 (D. Mass. Mar. 17, 2025)............................................................................13

*Archdiocese of Milwaukee Supporting Fund v. Invs. Fin. Servs.*,
 2007 WL 9797807 (D. Mass. July 31, 2007)............................................................................6

*In re Atl. Power Sec. Litig.*,
 98 F.Supp.3d 119 (D. Mass. 2015) ..........................................................................................14

*Barnstable Cty. v. 3M*,
 2017 WL 6452245 (D. Mass. Dec. 18, 2017).......................................................................6, 16

*Battle Const. v. InVivo Therapeutics Hldgs.*,
 101 F.Supp.3d 135 (D. Mass. 2015),
 *aff'd*, 845 F.3d 447 (1st Cir. 2017) ...........................................................................................7

*Beddall v. State Street Bank and Trust*,
 137 F.3d 12 (1st Cir. 1998).....................................................................................................3, 4

*In re Biogen Idec Sec. Litig.*,
 2007 WL 9602250 (D. Mass. Oct. 25, 2007),
 *aff'd*, 537 F.3d 35 (1st Cir. 2008) .............................................................................................7

*Burton v. AbbVie*,
 2023 WL 6396667 (C.D. Cal. Sept. 25, 2023) ........................................................................15

*Calvary Chapel of Bangor v. Mills*,
 542 F.Supp.3d 24 (D. Me. 2021),
 *aff'd*, 52 F.4th 40 (1st Cir. 2022) .............................................................................................15

*Celano v. Fulcrum Therapeutics*,
 2025 WL 928783 (D. Mass. Mar. 27, 2025)..............................................................5, 13, 17

*In re Celexa and Lexapro Mrktg. and Sales Practices Litig.*,
 2015 WL 3751422 (D. Mass. June 15, 2015).........................................................................17

*City of Edinburgh Council v. Pfizer*,
  754 F.3d 159 (3d Cir. 2014)...............................................................................................5

*Clorox Co. Puerto Rico v. Proctor & Gamble Com.*,
  228 F.3d 24 (1st Cir. 2000)............................................................................................3, 4

*In re Colonial Mortg. Bankers*,
  324 F.3d 12 (1st Cir. 2003)....................................................................................3, 4, 5, 6

*Conley v. U.S. Dep't of State*,
  731 F.Supp.3d 104 (D. Mass. 2024) ................................................................................15

*Corban v. Sarepta Therapeutics*,
  2015 WL 1505693 (D. Mass. Mar. 31, 2015),
  *aff'd*, 868 F.3d 31 (1st Cir. 2017) ...................................................................................14

*Doe v. Trs. of Dartmouth Coll.*,
  2018 WL 2048384 (D.N.H. May 2, 2018)..........................................................................6

*Fire & Police Pension Ass'n of Colo. v. Abiomed*,
  778 F.3d 228 (1st Cir. 2015)...............................................................................................7

*Fortuna v. Town of Winslow*,
  607 F.Supp.3d 29 (D. Me. 2022) ................................................................................15, 16

*Freeman v. Town of Hudson*,
  714 F.3d 29 (1st Cir. 2013).................................................................................................6

*Froyoworld Licensing v. Lin*,
  2014 WL 1347218 (D. Mass. Apr. 2, 2014) .....................................................................10

*Fudge v. Penthouse Int'l*,
  840 F.2d 1012 (1st Cir. 1988).......................................................................................4, 18

*Gent v. CUNA Mut. Ins. Soc'y*,
  611 F.3d 79 (1st Cir. 2010)...............................................................................................14

*Guerra v. Teradyne*,
  2004 WL 1467069 (D. Mass. Jan. 16, 2004).....................................................................13

*Gustavsen v. Alcon Lab'ys*,
  272 F.Supp.3d 241 (D. Mass. 2017) ...................................................................................8

*Haley v. City of Boston*,
  657 F.3d 39 (1st Cir. 2011).................................................................................................6

*Harrington v. Tetraphase Pharms.*,
  2017 WL 1946305 (D. Mass. May 9, 2017)........................................................................5

iv

*Howe v. Mass. Dep't of Corr.*,
2024 WL 3536830 (D. Mass. July 25, 2024)................................................................16

*Kader v. Sarepta Therapeutics*,
2016 WL 1337256 (D. Mass. Apr. 5, 2016) .............................................4, 7, 15, 17

*Kando v. Rhode Island St. Bd. of Elections*,
880 F.3d 53 (1st Cir. 2018)......................................................................................3

*Khoja v. Orexigen Therapeutics*,
899 F.3d 988 (9th Cir. 2018) ........................................................................4, 6, 11

*Kleinman v. Elan*,
706 F.3d 145 (2d Cir. 2013)....................................................................................5

*Leavitt v. Alnylam Pharms.*,
525 F.Supp.3d 259 (D. Mass 2021) .......................................................................13

*Leung v. bluebird bio*,
599 F.Supp.3d 49 (D. Mass. 2022) .....................................................................5, 13

*Lombardo v. CitiMortgage*,
2019 WL 3546630 (D. Mass. Mar. 4, 2019)............................................................16

*Meijer v. Ranbaxy*,
2016 WL 4697331 (D. Mass. June 16, 2016) ...........................................................7

*Melino v. Bos. Med. Ctr.*,
127 F.4th 391 (1st Cir. 2025)..................................................................................16

*Meyer v. Biopure*,
221 F.Supp.2d 195 (D. Mass. 2002) .........................................................................4

*O'Hara v. Diageo-Guinness, USA*,
306 F.Supp.3d 441 (D. Mass. 2018) .............................................................4, 6, 17

*Omnicare v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)................................................................................................5

*OrbusNeich Med. v. Bos. Sci.*,
694 F.Supp.2d 106 (D. Mass. 2010) .........................................................................8

*Paice v. Aldeyra Therapeutics*,
2025 WL 815065 (D. Mass. Mar. 14, 2025)............................................................15

*Patterson v. Bosch Marine*,
744 F.Supp.3d 142 (D. Mass. 2024) .......................................................................10

*Pease v. Burns*,
719 F.Supp.2d 143 (D. Mass. 2010) ................................................................4, 16

*Pension Trust v. J.Jill*,
360 F.Supp.3d 17 (D. Mass. 2018) ........................................................................4

*Pietrantoni v. Corcept Therapeutics*,
640 F.Supp.3d 197 (D. Mass. 2022) ....................................................................17

*Pizzuto v. Homology Meds.*,
2024 WL 1436025 (D. Mass. Mar. 31, 2024)...............................................4, 5, 15

*In re PLC Sys. Sec. Litig.*,
41 F.Supp.2d 106 (D. Mass. 1999) ......................................................................13

*In re PTC Therapeutics Sec. Litig.*,
2017 WL 3705801 (D.N.J. Aug. 28, 2017) .....................................................11, 17

*Quaak v. Dexia*,
357 F.Supp.2d 330 (D. Mass. 2005) ....................................................................13

*Shash v. Biogen*,
84 F.4th 1 (1st Cir. 2023)................................................................................5, 13

*Shaw v. Digital Equip.*,
82 F3d 1194 (1st Cir. 1996).........................................................................3, 4, 5

*Shulse ex rel. Shulse v. W. New England Univ.*,
2020 WL 4474274 (D. Mass. Aug. 4, 2020) ..........................................................6

*Simon v. Abiomed*,
37 F.Supp.3d 499 (D. Mass. 2014),
*aff'd*, 778 F.3d 228 (1st Cir. 2015) ........................................................................7

*Tellabs v. Makor Issues & Rts.*,
551 U.S. 308 (2007)...............................................................................................5

*Thevenin v. M&T Bank*,
468 F.Supp.3d 447 (D. Mass. 2020) ....................................................................10

*In re Thoratec Sec. Litig.*,
2006 WL 1305226 (N.D. Cal. May 11, 2006).......................................................13

*Tomaszewski v. Trevena*,
482 F.Supp.3d 317 (E.D. Pa. 2020), MTS.6......................................................9, 10

*Urman v. Novelos Therapeutics*,
796 F.Supp.2d 277 (D. Mass. 2011) ....................................................................13

*In re Vertex Pharms. Sec. Litig.*,
    357 F. Supp. 2d 343 (D. Mass. 2005) ...............................................................6, 15

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993).................................................................................4, 15

*Yan v. ReWalk Robotics*,
    330 F.Supp.3d 555 (D. Mass. 2018),
    *aff'd*, 973 F.3d 22 (1st Cir. 2020) ......................................................................7

*Young v. Lepone*,
    305 F.3d 1 (1st Cir. 2002)....................................................................................4

## Rules

Fed. R. Civ. P. 12(d) .........................................................................................17

## PRELIMINARY STATEMENT

Plaintiff seeks to distract from the merits of Defendants' Motion to Dismiss by asking this Court to ignore certain documents that are undeniably integral to his claims.[1] His Motion to Strike is premised on the flawed assertion that this Court must limit its review to those documents Plaintiff *chose* to expressly reference in the Amended Complaint. That position contravenes long-standing First Circuit precedent applying the doctrine of incorporation by reference: on a motion to dismiss, courts may consider any document that is "integral" to a complaint or to assessing its sufficiency without conversion to summary judgment, regardless of a plaintiff's artful pleading. That doctrine is particularly important here, where incorporated documents, by their plain terms, conclusively disprove Plaintiff's allegations. Plaintiff's Motion to Strike also contravenes First Circuit precedent holding that a court may take judicial notice of certain facts whose accuracy can be determined from reliable sources.

Plaintiff's attempt to strike the challenged exhibits fails on multiple grounds.

*First*, the FDA communications Plaintiff seeks to exclude—the FDA's January 25, 2024 Information Request ("IR") #19, Moderna's February 26, 2024 response to it, and Moderna's March 12, 2024 further clarification response—are expressly referenced in, and/or integral to, the Amended Complaint. Indeed, Plaintiff's entire case undisputedly hinges on his characterization of what the FDA told Moderna on January 25 and how Moderna responded. These communications are not offered for the underlying truth of their contents, but for the undisputed fact of them; they show what the FDA and Moderna indisputably did, and did not, say. Plaintiff's insistence that he

---

[1] Defined terms as in Defendants' opening brief in support of their Motion to Dismiss (Doc. No. 73). "Opp." refers to Plaintiff's Opposition to Defendants' Motion to Dismiss (Doc. No. 75). "Ex." refers to exhibits appended to the Declarations of Adam Rosenfeld, executed Oct. 24, 2025 and Jan. 14, 2026 (Doc. Nos. 72, 80). "MTS" refers to the Memorandum of Law in Support of Plaintiff's Motion to Strike (Doc. No. 77).

relies only on the FDA's subsequent—and necessarily incomplete—summary of these communications in May 2024 review memoranda is unavailing. That cherry-picking, whether directly by Plaintiff or through the FDA as an intermediary, is precisely what the doctrine of incorporation precludes. The salient question is not what a plaintiff chooses to reference, but whether the documents are integral to Plaintiff's claims and to assessment of their sufficiency. As such, courts in this Circuit have repeatedly considered the terms of private correspondence with the FDA on motions to dismiss securities actions challenging clinical trial-related disclosures. *Infra* Point II.A-B. Plaintiff also offers no credible challenge to the authenticity of these exhibits, including as established by attorney declaration, and instead offers only speculation.

*Second*, the ConquerRSV exhibits—the Protocol and Statistical Analysis Plan ("SAP"), the Clinical Study Report, and a *NEJM* article reporting the Protocol terms and trial results—are also expressly referenced in, and/or integral to, Plaintiff's allegations and are thus incorporated by reference. Indeed, Plaintiff's Opposition to Defendants' Motion to Dismiss repeatedly asserts what he claims the Protocol "required." None is offered for the truth of the matters asserted therein, but to show the Protocol terms and what data was reported—neither of which Plaintiff can or does dispute. Again, courts in this Circuit have regularly considered the terms of such documents on motions to dismiss in securities cases like this, challenging clinical trial-related disclosures. *Infra* Point II.C.

*Third*, Plaintiff offers no legitimate basis to contest this Court taking judicial notice of two facts from public FDA approval memoranda: GSK's Arexvy and Pfizer's Abrysvo RSV vaccines were approved after trials showing they had 82.6% VE and 67% VE, respectively. The former is alleged, ¶¶49, 51, 74, and the latter is undisputed. Courts in this Circuit routinely take judicial notice of public government approval decisions. *Infra* Point II.D.

2

*Fourth*, Plaintiff offers no legitimate basis to contest this Court taking judicial notice of the CDC's parity recommendation for FDA-approved RSV vaccines and the FDA's Good Clinical Practice ("GCP") guidance. Again, courts in this Circuit regularly take judicial notice of FDA and CDC regulatory actions and guidance. They are paradigmatic examples of documents properly the subject of judicial notice. *Infra* Point II.E-F.

*Finally*, Plaintiff concedes that this Court may take judicial notice of various regulatory approvals of mRESVIA with labeling showing 83.7% VE. Yet he objects to Defendants' *compilation* of those publicly available approvals, with hyperlinks for direct viewing, into a single annex for the Court's convenience. Courts regularly consider such annexes, which simply organize information to aid the Court, in securities litigation. *Infra* Point II.G.

**ARGUMENT**

I.    **RELEVANT LEGAL FRAMEWORK**

    A.    **Incorporation by Reference**

First Circuit precedent has long established that a court faced with a motion to dismiss may consider, without conversion to summary judgment, any document that is "integral" to the complaint or to "assessing the sufficiency" of its allegations. *Clorox Co. Puerto Rico v. Proctor & Gamble Com.*, 228 F.3d 24, 32 (1st Cir. 2000); *Shaw v. Digital Equip.*, 82 F3.d 1194, 1220 (1st Cir. 1996). A court may also consider any document "fairly incorporated" in a complaint. *Kando v. Rhode Island St. Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018); *In re Colonial Mortg. Bankers*, 324 F.3d 12, 15-16 (1st Cir. 2003). Such a document is one that is "central to" the claims, or upon which the claims necessarily depend. *See Beddall v. State Street Bank and Trust*, 137 F.3d 12, 17 (1st Cir. 1998) (document's "centrality to the plaintiffs' contentions … makes it in effect part of

3

the pleadings"). [2] A document need not be explicitly referenced to be "integral" or "fairly incorporated." *See Clorox*, 228 F.3d at 32; *Beddall*, 137 F.3d at 17.

The rationale for the doctrine is important, especially in a case governed by the PSLRA: to preclude cherry-picking from, and mischaracterization of, documents that otherwise doom a complaint. As the First Circuit observed:

> Any other approach would seriously hinder recourse to Rule 12 motions, as a plaintiff could thwart the consideration of a critical document merely by omitting it from the complaint. We doubt that the drafters of the Civil Rules, who envisioned Rule 12(b)(6) motions as a swift, uncomplicated way to weed out plainly unmeritorious cases, would have countenanced such a result.

*Beddall*, 137 F.3d at 17; *see also Shaw*, 82 F.3d at 1220 ("Were the rule otherwise, a plaintiff could maintain a claim of fraud by excising an isolated statement from a document and importing it into the complaint, even though the surrounding context imparts a plainly non-fraudulent meaning to the allegedly wrongful statement"). [3] Similarly, when a document "integral" to or "fairly incorporated" in a complaint contradicts an allegation therein, the document prevails. *Colonial Mortg.*, 324 F.3d at 15-16; *accord Clorox*, 228 F.3d at 32; *O'Hara v. Diageo-Guinness, USA*, 306 F.Supp.3d 441, 450 (D. Mass. 2018).

---

[2] *Accord Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002) (considering document "[w]hen the factual allegations of a complaint revolve around it"); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (court may consider "documents central to plaintiffs' claim"); *Pension Trust v. J.Jill*, 360 F.Supp.3d 17, 22 n.1 (D. Mass. 2018) (considering documents upon which plaintiff's claims "are necessarily dependent"); *Pease v. Burns*, 719 F.Supp.2d 143, 146 n.1 (D. Mass. 2010) (considering document that "bear[s] directly on" plaintiffs' claims); *Meyer v. Biopure*, 221 F.Supp.2d 195, 206 (D. Mass. 2002) (considering data that "provides the factual underpinning for a conclusion" relied on in complaint); *see also Pizzuto v. Homology Meds.*, 2024 WL 1436025, *2 (D. Mass. Mar. 31, 2024) (declining to consider document that claims "are not dependent upon"); *Kader v. Sarepta Therapeutics,* 2016 WL 1337256, *10 (D. Mass. Apr. 5, 2016) (declining to consider exhibits offered for context and not "essential to evaluating the sufficiency of the Complaint").

[3] *Accord Clorox*, 228 F.3d at 32; *Fudge v. Penthouse Int'l*, 840 F.2d 1012, 1015 (1st Cir. 1988); *see Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 1002 (9th Cir. 2018) ("The doctrine prevents plaintiffs from selecting only portions of documents that support their claims while omitting portions of those very documents that weaken—or doom—their claims.") (cited at MTS.4).

Documents incorporated by reference are considered, not for the truth of the matters asserted in them, but for the fact of their existence (*i.e.*, what their contents do or do not say). *See Pizzuto*, 2024 WL 1436025, *1; *Leung v. bluebird bio*, 599 F.Supp.3d 49, 57 (D. Mass. 2022); *see also Colonial Mortg.*, 324 F.3d at 15 (doctrine "is consistent with the axiom that a writing is the best evidence of its contents").

The doctrine of incorporation by reference is particularly important in securities litigation, for three reasons. *First*, a statement can be deemed actionable only when viewed in context. *See Shash v. Biogen*, 84 F.4th 1, 6 n.2 (1st Cir. 2023); *Shaw*, 82 F.3d at 1220; *Celano v. Fulcrum Therapeutics*, 2025 WL 928783, *14 n.21 (D. Mass. Mar. 27, 2025). *Second*, where opinions are challenged, a court must look beyond the stated opinion to consider whether it lacks any reasonable basis and/or whether plaintiff raises only legitimate scientific disagreement. *See Shash*, 84 F.4th at 17; *Harrington v. Tetraphase Pharms.*, 2017 WL 1946305, *5 (D. Mass. May 9, 2017).[4] *Third*, determining whether a plaintiff has pleaded a "strong inference" of scienter requires examination of all facts, including those in "sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs v. Makor Issues & Rts.*, 551 U.S. 308, 322-23 (2007).

## B.    <u>Judicial Notice</u>

It is equally well-settled that, in connection with motions to dismiss, courts may take judicial notice of facts that can accurately and readily be determined from sources whose reliability

---

[4] *Accord City of Edinburgh Council v. Pfizer*, 754 F.3d 159, 170-71 (3d Cir. 2014); *Kleinman v. Elan*, 706 F.3d 145, 153-54 (2d Cir. 2013); *see generally Omnicare v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190-91 (2015) ("The reasonable investor understands a statement of opinion in its full context.").

5

cannot reasonably be questioned. *Haley v. City of Boston*, 657 F.3d 39, 44, 46 (1st Cir. 2011); *Colonial Mortg.*, 324 F.3d at 15-16 (noting "hoary tenet that a court may look to matters of public record in deciding a Rule 12(b)(6) motion"); *accord O'Hara*, 306 F.Supp.3d at 450; *Barnstable Cty. v. 3M*, 2017 WL 6452245, *3 (D. Mass. Dec. 18, 2017); *In re Vertex Pharms. Sec. Litig.*, 357 F. Supp. 2d 343, 352 n.4 (D. Mass. 2005).[5]

## II.   THIS COURT MAY CONSIDER THE CHALLENGED EXHIBITS

### A.   The FDA's January 25 IR #19 Email (Ex.20) and Moderna's February 26 Response (Ex.21) Are Referenced in, and Integral to, the Amended Complaint and May Be Considered for What They Undisputedly Say

Defendants submitted Doc. Nos. 72-20 and 72-21 because Plaintiff's case hinges entirely on the FDA's communication on January 25, 2024 and Moderna's response on February 26, 2024. Plaintiff challenges Defendants' February through May 2024 disclosures that mRESVIA was shown to have 83.7% VE in the "primary analysis" and "per protocol analysis" based on 64 RSV cases and data published in the *NEJM* in December 2023. ¶¶79-101. According to Plaintiff, these

---

[5] Plaintiff fails to distinguish the authorities cited in footnote 1 to Defendants' opening brief in support of their Motion to Dismiss, MTS.n.2. Defendants' cases are part of an extensive body of caselaw permitting incorporation by reference and/or judicial notice, and each considered documents of the very kind submitted here. Meanwhile, Plaintiff's authority acknowledges these long-standing doctrines. *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013), MTS.2, reiterated that a court may consider "documents central to plaintiffs' claim" and "official public records." The court declined to consider deposition excerpts "unrelated to any matter discussed in the complaint," and to take judicial notice of 911 transcripts and police reports that were neither public records nor had sufficient "indicia of reliability." *Id.*; *see also Khoja*, 899 F.3d at 1002 (stating that court may consider document on which claims "necessarily depend[]") (cited at MTS.4); *Alternative Energy v. St. Paul Fire & Marine Ins.*, 267 F.3d 30, 34 (1st Cir. 2001) (considering settlement agreement where alleged liability "depends directly" on its interpretation) (cited at MTS.2); *Shulse ex rel. Shulse v. W. New England Univ.*, 2020 WL 4474274, *1-2 (D. Mass. Aug. 4, 2020) (considering documents "central" to claim) (cited at MTS.11); *Doe v. Trs. of Dartmouth Coll.*, 2018 WL 2048384, *1 (D.N.H. May 2, 2018) (stating that documents may be considered to "clarify the content of a particular document") (cited at MTS.11); *Archdiocese of Milwaukee Supporting Fund v. Invs. Fin. Servs.*, 2007 WL 9797807, *2 (D. Mass. July 31, 2007) (considering documents "relevant" to claims) (cited at MTS.9).

disclosures were false because on January 25, 2024, the FDA "rejected" the November 30, 2022 dataset underlying that analysis, required "corrected" datasets, and "informed" Moderna that "FDA approval (and mRESVIA's product label) would be based on the corrected datasets." Plaintiff further asserts that on February 26, 2024, Moderna submitted "corrected" datasets that included an additional 21 cases not previously "known," and "agreed" that mRESVIA's "correct" and "actual" VE was 78.7%. ¶¶10-11, 56-58, 61-62, 81; Opp.1-2, 5-7, 11-12, 15-16, 21, 25, 31-32.

Defendants provided the Court with those very January 25 and February 26 communications, whose contents speak for themselves. They are submitted *not* for the truth of anything said in them, but to show what was said. These communications are expressly referenced throughout the Amended Complaint. *See* ¶¶10-11, 56-58, 61-62, 81. Even if they were not expressly referenced, they are unquestionably integral to Plaintiff's allegations and assessment of their sufficiency, and are therefore incorporated by reference.

Both the First Circuit and courts in this District have considered private communications with the FDA on dismissal motions in securities cases challenging clinical trial-related disclosures. *See Fire & Police Pension Ass'n of Colo. v. Abiomed*, 778 F.3d 228, 232 n.2 (1st Cir. 2015) (considering FDA correspondence submitted by defendants); *Yan v. ReWalk Robotics*, 330 F.Supp.3d 555, 561 n.1 (D. Mass. 2018) (same), *aff'd*, 973 F.3d 22 (1st Cir. 2020).[6] Plaintiff's

---

[6] *Accord Battle Const. v. InVivo Therapeutics Hldgs.*, 101 F.Supp.3d 135, 140-141 (D. Mass. 2015), *aff'd*, 845 F.3d 447 (1st Cir. 2017); *Simon v. Abiomed*, 37 F.Supp.3d 499, 504 n.3 (D. Mass. 2014), *aff'd*, 778 F.3d 228 (1st Cir. 2015); *see also Meijer v. Ranbaxy*, 2016 WL 4697331, *8 (D. Mass. June 16, 2016) (considering private correspondence with FDA submitted by defendants in antitrust case); *In re Biogen Idec Sec. Litig.*, 2007 WL 9602250, *11-12 (D. Mass. Oct. 25, 2007) (considering transcript from FDA Advisory Committee Hearings), *aff'd*, 537 F.3d 35 (1st Cir. 2008); *see generally Kader,* 2016 WL 1337256, *11 (refusing to strike FDA statements because "the Court is not considering the FDA's statements for the truth of the matter asserted" and "the mere existence of such statements may be relevant to the allegedly misleading nature of [a party's] representations and omissions").

authority, MTS.5, is not to the contrary. *Gustavsen v. Alcon Lab'ys*, 272 F.Supp.3d 241, 246, 252 (D. Mass. 2017), confirmed that a court may consider "documents central to plaintiff's claims" and information on the FDA's website. The court declined to consider additional FDA material submitted *by the plaintiffs*, because they had possessed it before filing but chose not to include it. *Id.*, 252 n.2. In *OrbusNeich Med. v. Bos. Sci.*, 694 F.Supp.2d 106, 111 (D. Mass. 2010), the court declined to consider an email that, unlike here, was not incorporated by reference.

Plaintiff insists that while the two exhibits "match dates of communications" he alleges, the "basis" for his allegations about the January 25 and February 26 communications is the subsequent *description* of them in the FDA's May 2024 Summary Basis for Regulatory Action ("Summary Action") and BLA Clinical Review Memorandum. MTS.5. That elevates form over substance. As Plaintiff concedes, the later May memoranda "cite[]," "reference[]," and summarize the underlying January 25 and February 26 communications. MTS.5. The May memoranda do not, and do not purport to, provide a complete description of the contents of those underlying communications. Nor could they, as the January 25 email spanned over 5 pages (single spaced) and the February 26 submission was almost three dozen pages long (single spaced). The May memoranda also do not purport to catalogue all Moderna submissions, positions, or objections. Moreover, the May memoranda do not say that the January 25 and February 26 communications conveyed what Plaintiff claims. The Summary Basis is silent on the January and February communications. *See* Doc. No. 74-1 (Plaintiff's submission of Summary Basis). Similarly, the BLA Clinical Review Memorandum—which has only two short passages about the underlying communications, *see* Doc. No. 74-2 (Plaintiff's submission of BLA Clinical Review Memorandum) at 3, 31—says nothing about "rejection," "correction," or "agreement" by

8

Moderna, let alone in January or February.[7]

Plaintiff's reliance on *Tomaszewski v. Trevena*, 482 F.Supp.3d 317 (E.D. Pa. 2020), MTS.6, is unavailing. That decision is both distinguishable and contravenes First Circuit precedent:

- The plaintiff there relied on "verbatim quotation" from public FDA memoranda, 482 F.Supp.3d at 328, whereas here, Plaintiff paraphrases and mischaracterizes the BLA Clinical Review Memorandum's reference to and summary of the January 25 and February 26 communications, grafting on terms of "rejection," "correction," "agreement," and "replacement" that are nowhere used in the Memorandum or Summary Basis for Regulatory Action.

- The defendants there submitted only excerpted portions of the FDA correspondence, "bolster[ing] the inference that Defendants are seeking to use the incorporation by reference doctrine to create a defense … without allowing Plaintiffs to obtain discovery." 482 F.Supp.3d at 329 n.58. Here, Defendants submitted the exhibits in their entirety.

- The out-of-Circuit decision contravenes First Circuit precedent empowering courts to review documents that are "fairly incorporated" in and "integral" to a complaint, to preclude cherry-picking. *Supra* Point I. Just as Plaintiff may not selectively rely on portions of documents he has seen, he should not be permitted to do so through an intermediary's necessarily incomplete summary of documents he has not seen. That is consistent with courts in this Circuit considering private FDA correspondence submitted by defendants.

- The decision separately contravenes First Circuit precedent empowering courts to weed out doomed complaints—*i.e.*, those that necessarily depend on communications whose plain terms refute a plaintiff's allegations—at the pleading stage. *Supra*.4.

That leaves Plaintiff's challenge to authenticity. The assertion that Plaintiff could not "verify" the exhibits before filing, MTS.5-6, does not mean they are not authentic. He otherwise speculates it is "possible" there are "multiple communications" on the very same two dates yet inconsistent with the ones submitted. MTS.5. Such speculation is never sufficient, and certainly not in a case governed by the PSLRA, which requires the pleading of facts.

Meanwhile, Plaintiff mounts no challenge to the declaration authenticating the exhibits,

---

[7] Plaintiff's argument that the February 26 datasets "replaced" and "superseded" the prior data, Opp.2, 25, 32-33, comes *only* from the January 25 email. The May memoranda say nothing about a January 25 or February 26 communication regarding "replacement."

Doc. No. 72. *See Tomaszewski*, 482 F.Supp.3d at 328 n.44 (accepting counsel's declaration on authenticity). The exhibits' plain terms further demonstrate their authenticity and reliability:

- The January 25 email comes from an FDA email address and has an FDA signature block; its subject is "IR #19 – Datasets," and requests "updated datasets" and a "Summary of Changes report," Doc. No. 72-20 at 1, 5-6.

- The February 26 submission is titled "Summary of Changes to Clinical Study Report Data," and notes that it maps data "as specified in IR 19," Doc. No. 72-21 at 1, 6.

- The February 26 submission's cover letter states that it provides "the responses to the Information Request #19 received on 25 January 2024," and that it is being filed electronically with the FDA as "Sequence No. 0039," Doc. No. 72-21 (cover letter).

To dispel any further speculation, Defendants now submit the FDA's acknowledgement of the electronic submission, corresponding to the date (February 26, 2024) and Sequence Number (0039), which is specific to that submission. Decl. of Adam Rosenfeld, executed Jan. 14, 2026, Doc. No. 80, at ¶2; Ex.42 (FDA 2/26/24 Receipt), Doc. No. 80-1.[8]

### B.    Moderna's March 12 Submission (Ex.22) Is Integral to the Amended Complaint and May Be Considered for What It Undisputedly Says

Moderna's March 12, 2024 submission to the FDA, Doc. No. 72-22, is not "extrinsic," MTS.4, but also integral to Plaintiff's allegations and assessment of their sufficiency. It continues Moderna's February 26 response to IR #19 from January 25, expressly titled "Clarification Memo IR #19." Doc. No. 72-22. More fundamentally, Plaintiff's claim that Moderna "corrected" the November 2022 dataset and "agreed" that mRESVIA's "correct" VE was 78.7%, *supra*.7, necessarily depends on Moderna's communications with the FDA in response to IR #19.

---

[8] Plaintiffs' cases, MTS.6-7, involved genuine disputes regarding authenticity. The defendants submitted documents they claimed had been given to the plaintiffs, but each plaintiff disputed receipt based on personal knowledge. *Patterson v. Bosch Marine*, 744 F.Supp.3d 142, 148 (D. Mass. 2024); *Thevenin v. M&T Bank*, 468 F.Supp.3d 447, 450 (D. Mass. 2020). Meanwhile, *Froyoworld Licensing v. Lin*, 2014 WL 1347218, *2 (D. Mass. Apr. 2, 2014), is fatal to Plaintiff, as the court found that it could consider "the fact that statements and facts are contained" in the submitted exhibits.

10

Defendants do not offer Doc. No. 72-22 as "counterfactual narrative," MTS.4. Again, it is offered *not* for the truth of the matters asserted therein, but to show its contents—what Moderna undisputedly relayed to the FDA. *See supra*.7 & n.6 (cases considering correspondence with FDA).[9] As such, Plaintiff's insistence that its "contents … are controverted by official FDA documents," MTS.4, is inapposite.

That leaves Plaintiff purporting to challenge the exhibit's authenticity, but he again raises no serious challenge. As an initial matter, Plaintiff misreads the authenticating declaration, MTS.4. The declaration does not say that the March 12 submission is referenced in the identified paragraphs. Rather, the declaration says it was "submitted to the FDA in further response to its January 25, 2024 email request for information," which FDA request is referenced in the identified paragraphs. Doc. No. 72 at ¶23. Plaintiff otherwise proffers no challenge to the declaration.

Rather, Plaintiff insists that the FDA's BLA Clinical Review Memorandum "has no record" of the March 12 submission being sent or received, or of a post-hoc review or dispute with Moderna, MTS.4. That again is speculation. The BLA Clinical Review Memorandum does not purport to catalogue all submissions, positions, or objections from Moderna.

Meanwhile, the plain terms of Doc. No. 72-22 further demonstrate its authenticity and reliability:

- The submission is titled "Clarification Memo IR#19" and notes Moderna's "position" in response to the "dataset remapping requested … in IR 19," Doc. No. 72-22 at 1-2.

- The submission's cover letter repeats that it provides Moderna's position in response to IR

---

[9] Submission of the exhibit is thus permissible under Plaintiff's own cases, MTS.4. In *In re PTC Therapeutics Sec. Litig.*, 2017 WL 3705801, *3 n.5 (D.N.J. Aug. 28, 2017), defendants sought to draw inferences "*beyond* the mere existence of statements within" certain submitted documents (emphasis added). In *Khoja*, the court found that a number of exhibits, including FDA reports, were integral to the complaint and properly considered.  899 F.3d at 1004-07. The court found others should not have been considered because the defendants "improperly asked the district court to engage in fact-finding" *beyond* existence of the statements therein. *Id.* at 1003, 1006.

11

#19, Doc. No. 72-22 (cover letter).

- The cover note states that the submission was provided to the FDA by email on March 11, 2024, and was being electronically submitted as "Sequence No. 0046" on March 12, 2024, Doc. No. 72-22 (cover letter).

To dispel any further speculation, Defendants now submit the FDA's acknowledgement of the electronic submission, corresponding to the date (March 12, 2024) and sequence number (0046) specific to it. Ex.43 (FDA 3/12/24 Receipt), Doc. No. 80-2. Plaintiff's assertions as to authenticity are a canard.

### C. The ConquerRSV Documents (Exs.17-19, 34-35) Are Referenced in, and/or Integral to, the Amended Complaint and May Be Considered for What They Undisputedly Say

These exhibits are the ConquerRSV trial's Protocol, Doc. No. 72-17; its SAP, Doc. No. 72-18; its Clinical Study Report, Doc. No. 72-19; and a *NEJM* peer-reviewed article with Supplemental Appendix publishing the Protocol, SAP, and trial results, Doc. Nos. 72-34, 72-35.[10] Defendants submitted these exhibits to document the terms of the Protocol and SAP, and the last two also document the results that were published from the December 2022 primary analysis. *None is disputed. See* Opp.5, 12. Again, these exhibits are offered *not* for the truth of the matters asserted therein but to show their contents.

Contrary to Plaintiff's insistence, MTS.7, the Amended Complaint does reference the Protocol. Plaintiff's description of the trial's purpose, design, and primary efficacy endpoints, ¶43, necessarily come from it.[11] Regardless, Plaintiff's Opposition concedes that, and explains why,

---

[10] The SAP is part of the Protocol. *See* Doc. No. 72-17 at 89; Doc. No. 72-18 at 8.

[11] Plaintiff again misreads the authenticating declaration, MTS.7-8. The declaration accurately states that the SAP is "part of the ConquerRSV Protocol," and that the Protocol, in turn, is referenced in the Amended Complaint. Doc. No. 72 at ¶19. The declaration also accurately states that the Clinical Study Report was submitted to the FDA "as part of Moderna's BLA submission," with the BLA submission referenced in the Amended Complaint. Doc. No. 72 at ¶20.

these documents are integral to his claims and assessing the sufficiency thereof: per Plaintiff, the

Protocol "required" inclusion of an additional 21 RSV cases later extracted, thereby rendering false

Defendants' representations about what the "primary analysis" and "per protocol analysis" showed,

Opp.1-3, 6-7, 14, 21-22, 31.

The First Circuit and courts in this District regularly consider exhibits showing clinical trial

protocols and reported trial results on dismissal motions in securities cases like this. *See Shash*, 84

F.4th at 6-7 (discussing trial protocol, conduct, and data collection); *In re Apellis Pharms. Sec.

Litig.*, 2025 WL 836491, *6-7 (D. Mass. Mar. 17, 2025) (considering protocol).[12] Plaintiff's

reliance on cases refusing to consider certain articles, MTS.9, is misplaced. In those cases, third-

party news or journal articles were submitted as background or to support a party's view.[13] Here,

the *NEJM* article was authored *by the ConquerRSV study group*, *see* Doc. No. 72-34 at 2233, to

publish the trial design and December 2022 results.

Plaintiff's cavil that these (and certain other) exhibits pre-date the putative Class Period,

MTS.10, gets him nowhere. Pre-class period disclosures and information are regularly considered

as necessary background and context for allegedly false statements. *See Shash*, 84 F.4th at 6-7 &

n.6 (discussing trial protocol, conduct, and data collection before class period); *see also Celano*,

---

[12] *Accord Leavitt v. Alnylam Pharms.*, 525 F.Supp.3d 259, 266 & n.1 (D. Mass 2021) (considering study protocol and statistical analysis plan); *Urman v. Novelos Therapeutics*, 796 F.Supp.2d 277, 282 (D. Mass. 2011) (considering Informational Amendment to Investigational New Drug application); *see also Abely v. Aeterna Zentaris*, 2013 WL 2399869, *21-22 (S.D.N.Y. May 29, 2013) (considering protocol terms and history of amendments); *In re Thoratec Sec. Litig.,* 2006 WL 1305226, *4 (N.D. Cal. May 11, 2006) (considering *NEJM* article reporting trial results).

[13] *See Leung*, 599 F.Supp.3d at 58 (journal article submitted to support defendant's viewpoint); *Quaak v. Dexia*, 357 F.Supp.2d 330, 338-39 (D. Mass. 2005) (newspaper articles for background); *Guerra v. Teradyne*, 2004 WL 1467069, *2 (D. Mass. Jan. 16, 2004) (same); *In re PLC Sys. Sec. Litig.*, 41 F.Supp.2d 106, 118 (D. Mass. 1999) (scientific articles "espousing" same as defendant's viewpoint).

13

2025 WL 928783, *3 n.6 & 4 n.7 (considering pre-class period disclosures).[14]

Finally, Plaintiff concedes the authenticity of most of these exhibits, but questions whether the Clinical Study Report submitted as Doc. No. 72-19 is the document submitted to the FDA, MTS.8. Again, he offers nothing but speculation. Plaintiff raises no challenge to the authenticating declaration, Doc. No. 72 at ¶20, which also identified (with hyperlinks) where the report is publicly available through other jurisdictions' public repositories of regulatory submissions. Plaintiff's protest that the submission on the linked Canadian website bears a different footer and watermark than Doc. No. 72-19, MTS.8, again elevates form over substance. Even a cursory comparison of Doc. No. 72-19 and the document available on the linked website demonstrates that the text of the 230+ page reports is *identical*. Indeed, the suggestion that Moderna would submit substantively different Clinical Study Reports for the same trial makes no sense.[15]

### D. The Court May Take Judicial Notice of Two Facts in FDA Clinical Review Memoranda Regarding GSK's Arexvy (Ex.32) and Pfizer's Abrysvo (Ex.33)

Defendants submitted Doc. Nos. 72-32 and 72-33—FDA approval memoranda posted on the FDA's website—for judicial notice of two undisputed facts: (i) GSK's Arexvy was approved with a label showing 82.6% VE, and (ii) Pfizer's Abrysvo was approved with a label showing 67% VE. Courts routinely take judicial notice of government approvals and similar data available on government websites. *See Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking

---

[14] *Accord Corban v. Sarepta Therapeutics*, 2015 WL 1505693, *5 (D. Mass. Mar. 31, 2015), *aff'd*, 868 F.3d 31 (1st Cir. 2017); *In re Atl. Power Sec. Litig.*, 98 F.Supp.3d 119, 122-23 (D. Mass. 2015).

[15] Plaintiff's protest that Doc. No. 72-19 was excerpted, MTS.n.5, is baseless. Defendants submitted the relevant portions of the Clinical Study Report cited in the opening brief on their Motion to Dismiss, and provided hyperlinks to the full report on two websites. *See* Doc. No. 72 at ¶20 n.10. Both websites are "freely available," MTS.8. The EU website requires a log-in that can be created without charge; the Canadian website requires no log-in. Plaintiff was free to review the entire report and submit any other portions he deemed relevant to challenge authenticity. His decision not to do so speaks volumes.

14

judicial notice of relevant facts about Lyme disease on CDC website); *Calvary Chapel of Bangor v. Mills*, 542 F.Supp.3d 24, 27-28 & n.4 (D. Me. 2021) (same for number of COVID cases and vaccination rates on government website), *aff'd*, 52 F.4th 40 (1st Cir. 2022).[16]

Because judicial notice, not incorporation by reference, is sought, Plaintiff's insistence that his Amended Complaint does not reference these two documents, MTS.8, is beside the point. Regardless, Plaintiff concedes that the Amended Complaint "refer[s] to the FDA's approval of Arexvy and Abrysvo, and those products' VE." MTS.8.

Judicial notice of these two undisputed facts is not only permissible but also appropriate here. Plaintiff's theory also hinges on the assertion that, because Arexvy and Abrysvo were approved before mRESVIA, Moderna needed to "differentiate" mRESVIA as "superior" through higher VE. *See* ¶¶7, 41, 46, 51, 65, 112-117; Opp.1, 3, 5, 8, 27-28, 32. While Plaintiff spotlights Arexvy's 82.6% VE, ¶¶49, 51, 74, 113, he omitted from the Amended Complaint Abrysvo's 67% VE. Such artful pleading should not be countenanced.

### E.      The Court May Take Judicial Notice of the FDA's Guidance E6(R3) Good Clinical Practice (Ex.37)

Plaintiff cites no authority in support of his request that the Court ignore Doc. No. 72-37, the FDA's GCP guidance. MTS.9. That is unsurprising. Courts regularly take judicial notice of public regulatory guidance, including from the FDA. *See Paice v. Aldeyra Therapeutics*, 2025 WL 815065, *1 n.3 (D. Mass. Mar. 14, 2025); *Pizzuto*, 2024 WL 1436025, *2-3.[17]

---

[16] *Accord Fortuna v. Town of Winslow*, 607 F.Supp.3d 29, 35-36 (D. Me. 2022) (taking judicial notice of epidemiological data from CDC and Main CDC); *Conley v. U.S. Dep't of State*, 731 F.Supp.3d 104, 108 n.3 (D. Mass. 2024) (same for status of visa application on Department of State website); *see also Burton v. AbbVie*, 2023 WL 6396667, *2 n.3 (C.D. Cal. Sept. 25, 2023) (taking judicial notice of FDA records, including "drug approval package"); *see generally Watterson*, 987 F.2d at 3 (court may consider "official public records").

[17] *Accord Kader*, 2016 WL 1337256, *10-11 (taking judicial notice of FDA official response to citizen petition); *Vertex*, 357 F.Supp.2d at 352 n.4 (same for FDA policy); *see also Fortuna*, 607

Because the Court can take judicial notice of the guidance, Plaintiff's insistence that it is "extrinsic" and "irrelevant," MTS.8-9, fails. Regardless, the guidance is neither. The Protocol mandated that ConquerRSV be conducted in accordance with GCP principles. Doc. No. 72-17 at 1, 12; Doc. No. 74-2 at 8. While the guidance may be inconvenient for Plaintiff's theory of fraud— it precluded Moderna from conducting retrospective, post hoc analyses—this Court need not close its eyes to it.

### F.     The Court May Take Judicial Notice of the CDC's Parity Recommendation (Ex.36)

Plaintiff fares no better with his request to ignore the CDC's parity recommendation, Doc. No. 72-36, recommending a single dose of any FDA-approved RSV vaccine. MTS.9. Plaintiff's failure to cite any caselaw in support of this bid is again unsurprising. The recommendation constitutes public, official government action and thus is a proper subject of judicial notice. *See Melino v. Bos. Med. Ctr.*, 127 F.4th 391, 397 & 394 n.1 (1st Cir. 2025) (taking judicial notice of CDC recommendations); *Howe v. Mass. Dep't of Corr.*, 2024 WL 3536830, *2 n.2 (D. Mass. July 25, 2024) (same for CDC guidance recommending COVID vaccination).[18] That Plaintiff chose to omit mention of the parity decision from the Amended Complaint, MTS.9—while emphasizing market competition from Abrysvo and Arexvy—is irrelevant. Defendants seek judicial notice of the public, official regulatory action, not incorporation by reference.

---

F.Supp.3d at 35-36 (taking judicial notice of CDC guidance); *Lombardo v. CitiMortgage*, 2019 WL 3546630, *1 (D. Mass. Mar. 4, 2019) (same for Department of Treasury guidance); *Barnstable*, 2017 WL 6452245, *5-6 (same for public regulatory reports).

[18] *Accord Fortuna*, 607 F.Supp.3d at 35-36 (taking judicial notice of CDC guidance); *see also Pease*, 719 F.Supp.2d at 146 n.1 ("it is proper ... to take judicial notice of decisions of an administrative agency").

### G.    Annex A to Defendants' Memorandum of Law Supporting Their Motion to Dismiss (Ex.41) Is Properly Before the Court

Annex A, Doc. No. 72-41, compiles hyperlinks to six publicly available regulatory approvals or regulatory-approved labels for mRESVIA showing 83.7% VE. Plaintiff nowhere challenges the Court taking judicial notice of the fact of public approvals of mRESVIA at that VE, *see* MTS.10, for good reason. *See O'Hara*, 306 F.Supp.3d at 457 (taking judicial notice of Alcohol Tobacco Tax and Trade Bureau decisions approving bottle labeling); *In re Celexa and Lexapro Mrktg. and Sales Practices Litig.*, 2015 WL 3751422, *3 (D. Mass. June 15, 2015) (same for FDA-approved drug labels); *see also supra* Points II.D-F (citing cases taking judicial notice of government action).

Instead, Plaintiff curiously objects to organization of the approvals in one chart with hyperlinks for direct viewing, for the Court's convenience. Charts compiling information to aid the Court are regularly accepted in securities actions, especially where (as here) they contain no legal argument. *See Celano*, 2025 WL 928783, *14 n.21; *accord PTC Therapeutics*, 2017 WL 3705801, *3 n.5 (cited at MTS.4, 10); *Kader*, 2016 WL 1337256, *10.

Plaintiff's reliance on *Pietrantoni v. Corcept Therapeutics*, 640 F.Supp.3d 197 (D. Mass. 2022), MTS.10, is misplaced. There, unlike here, counsel submitted "data summaries" without revealing the "specific methodology in compiling these data." 640 F.Supp.3d at 205-06.

### III.    PLAINTIFF HAS NOT PLEADED FACTS TO JUSTIFY DISCOVERY

As demonstrated *supra* at Point I, the incorporation by reference and judicial notice doctrines empower courts to consider key documents and regulatory matters at the motion to dismiss stage, without conversion to summary judgment or discovery. Nothing in Fed. R. Civ. P. 12(d), MTS.11, circumvents these well-settled doctrines or grants Plaintiff a right of discovery.

Nor has Plaintiff pleaded facts that create a genuine dispute of fact to justify discovery. The

Motion to Strike nowhere identifies what discovery Plaintiff believes he needs in connection with consideration of the challenged exhibits. Instead, he proffers only speculation about the authenticity of four exhibits. *Supra.*9, 11, 14. Moreover, any discovery would not change the legal implication from what the exhibits undisputedly say. *See Fudge*, 840 F.2d at 1015 ("Nothing [plaintiffs] could have introduced could have affected the disposition of the purely legal questions that the motion to dismiss raised").

At bottom, Plaintiff may not like that Defendants' exhibits, by their plain terms, defeat his speculation and mischaracterization. But that is not a proper basis for discovery or for ignoring documents that courts are expressly empowered to consider, and do consider, at the pleading stage.

## CONCLUSION

Plaintiff's Motion to Strike should be denied.

Dated: January 14, 2026

Respectfully submitted,

/s/ *Sara Jane Shanahan*
Sara Jane Shanahan (BBO# 567837)
Mariem Marquetti (BBO# 709438)
SHERIN AND LODGEN LLP
One Lincoln Street
Boston, MA 02111
Telephone: (617) 646-2000
sjshanahan@sherin.com
mmarquetti@sherin.com

Boris Feldman (*pro hac vice*)
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 461-8200
boris.feldman@freshfields.com

/s/ *Meredith Kotler*
Meredith Kotler (*pro hac vice*)
Adam Rosenfeld (*pro hac vice*)
FRESHFIELDS US LLP
3 World Trade Center

18

175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
meredith.kotler@freshfields.com
adam.rosenfeld@freshfields.com

*Attorneys for Defendants*

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendants believe that oral argument may assist the Court in resolving this Opposition and therefore request oral argument on this Opposition.

/s/ *Sara Jane Shanahan*
Sara Jane Shanahan

19

## CERTIFICATE OF SERVICE

I certify that this document filed through the EF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date specified below.

Dated: January 14, 2026

 */s/ Meredith Kotler*
Meredith Kotler

20