**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASON WENTZ, Individually and On Behalf of All Others Similarly Situated, <br><br>               Plaintiff, <br><br>       v. <br><br> MODERNA, INC., STÉPHANE BANCEL, JAMES M. MOCK, and STEPHEN HOGE, <br><br><br><br>             Defendants. | Case No. 1:24-cv-12058-IT <br><br><br> **ORAL ARGUMENT REQUESTED** <br><br> **(LEAVE TO FILE REPLY OF 17 PAGES GRANTED DOC. NO. 61, 6/24/2025, DOC. NO. 70, 10/15/2025, AND DOC. NO. 79, 12/11/2025)** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

REPLY BACKGROUND..........................................................................................................2

ARGUMENT...............................................................................................................................6

I.     PLAINTIFF FAILED TO PLEAD A SECTION 10(b) CLAIM.......................................6

       A.     Plaintiff Failed to Identify Any False or Misleading Statement...........................6

       B.     The Challenged Statements Are Inactionable Opinions .......................................9

       C.     Plaintiff Failed to Plead the Requisite Strong Inference of Scienter ...................10

              1.     Plaintiff Failed to Plead Motive...............................................................10

              2.     Plaintiff Failed to Plead Conscious Intent to Defraud
                     or Recklessness .........................................................................................12

       D.     Plaintiff Failed to Plead Loss Causation.............................................................16

       E.     Plaintiff Failed to Plead Scheme Liability...........................................................17

II.    PLAINTIFF FAILED TO PLEAD A SECTION 20(a) CLAIM .......................................17

CONCLUSION...........................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aca Fin. Guar. v. Advest*,
    512 F.3d 46 (1st Cir. 2008)................................................................................17

*Alaska Elec. Pension Fund v. Pharmacia*,
    554 F.3d 342 (3d Cir. 2009)...............................................................................10

*In re Ariad Pharms. Sec. Litig.*,
    842 F.3d 744 (1st Cir. 2016).................................................................................7

*In re Biogen Sec. Litig.*,
    857 F.3d 34 (1st Cir. 2017).................................................................................13

*In re Biogen Sec. Litig.*,
    179 F.R.D. 25 (D. Mass. 1997)...........................................................................8

*Brennan v. Zafgen*,
    853 F.3d 606 (1st Cir. 2017)..............................................................................11

*Brennan v. Zafgen*,
    199 F.Supp.3d 444 (D. Mass. 2016),
    *aff'd*, 853 F.3d 606 (1st Cir. 2017) ...................................................................14

*Brumbaugh v. Wave Sys.*,
    416 F.Supp.2d 239 (D. Mass. 2006) ..................................................................17

*Celano v. Fulcrum Therapeutics*,
    2025 WL 928783 (D. Mass. Mar. 27, 2025) .................................................14, 17

*Collier v. ModusLink Glob. Sols.*,
    9 F.Supp.3d 61 (D. Mass. 2014) ........................................................................12

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite*,
    22 F.4th 1 (1st Cir. 2021)..............................................................................12, 15

*Dahhan v. OvaScience*,
    321 F.Supp.3d 247 (D. Mass. 2018) ..................................................................15

*In re Delcath Sys. Sec. Litig.*,
    36 F.Supp.3d 320 (S.D.N.Y. 2014) .....................................................................8

*In re EDAP TMS Sec. Litig.*,
    2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015).......................................................8

*Fire & Police Pension Ass'n of Colo. v. Abiomed*,
   778 F.3d 228 (1st Cir. 2015)................................................................................17

*Gerneth v. Chiasma*,
   2018 WL 935418 (D. Mass. Feb. 15, 2018) ...............................................................8

*Gillis v. QRX Pharma*,
   197 F.Supp.3d 557 (S.D.N.Y. 2016)........................................................................8

*Goucher v. Iterum Therapeutics*,
   648 F.Supp.3d 962 (N.D. Ill. 2022) .........................................................................8

*Hoey v. Insmed*,
   2018 WL 902266 (D.N.J. Feb. 15, 2018) .................................................................8

*In re iRobot Sec. Litig.*,
   527 F.Supp.3d 124 (D. Mass. 2021) ......................................................................15

*Kader v. Sarepta Therapeutics*,
   887 F.3d 48 (1st Cir. 2018)...................................................................................11

*Noble Asset Mgmt. v. Allot Therapeutics*,
   2005 WL 4161977 (D. Colo. Oct. 20, 2005) .............................................................8

*Omnicare v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)....................................................................................... 9-10

*Perkins v. City of Attleboro*,
   969 F.Supp.2d 158 (D. Mass. 2013) ........................................................................3

*Pizzuto v. Homology Meds.*,
   2024 WL 1436025 (D. Mass. Mar. 31, 2024)......................................................9, 15

*Quinones v. Frequency Therapeutics*,
   665 F.Supp.3d 156 (D. Mass. 2023),
   *aff'd*, 106 F.4th 177 (1st Cir. 2024) ..................................................................12, 15

*Ryan v. Newark Grp.*,
   __ F.Supp.3d__, 2025 WL 3777202 (D. Mass. Dec. 30, 2025) .................................2

*Sanders v. AVEO Pharm.*,
   2015 WL 1276824 (D. Mass. Mar. 20, 2015)............................................................8

*Schueneman v. Arena Pharms.*,
   840 F.3d 698 (9th Cir. 2016) ..................................................................................8

*SEC v. Liberty*,
   2021 WL 664834 (D. Me. Feb. 19, 2021) ...............................................................17

iii

*SEC v. Sharp*,
   626 F.Supp.3d 345 (D. Mass. 2022) ..................................................................................17

*In re Sepracor Sec. Litig.*,
   308 F.Supp.2d 20 (D. Mass. 2004) .....................................................................................8

*Shash v. Biogen*,
   84 F.4th 1 (1st Cir. 2023)...................................................................................6, 10, 15

*Shih v. Amylyx Pharms.*,
   __ F.Supp.3d __, 2025 WL 2807756 (D. Mass. Sept. 30, 2025)............................................16

*Sigma-Aldrich v. Stonebrook*,
   2025 WL 1927623 (D. Mass. July 12, 2025)..........................................................................3

*State Tchrs. Ret. Sys. of Ohio v. Charles River Lab'ys Int'l*,
   152 F.4th 1 (1st Cir. 2025)................................................................................8, 12, 14

*Tellabs v. Makor Issues & Rts.*,
   551 U.S. 308 (2007)...........................................................................................................16

*In re Transkaryotic Therapies Sec. Litig.*,
   319 F.Supp.2d 152 (D. Mass. 2004) ..............................................................................7, 8, 15

*Yan v. ReWalk Robotics*,
   973 F.3d 22 (1st Cir. 2020).................................................................................................14

**PRELIMINARY STATEMENT**

Plaintiff's Opposition ("Opposition" or "Opp") admits this case is governed by the PSLRA, which requires Plaintiff to plead *facts*, not speculation or mischaracterization, to support his claims.[1] Plaintiff further confirms three points, any and all of which doom the Amended Complaint.

*First*, Plaintiff's falsity, scienter, and loss causation theories hinge on documents and disclosures that nowhere support, but rather preclude, Plaintiff's assertions that (i) on January 25, 2024, the FDA "rejected" the dataset underlying the DSMB-reviewed, *NEJM*-published primary analysis showing mRESVIA's VE was 83.7%, and "informed" Moderna that approval would be based on "corrected" data, and (ii) on February 26, 2024, Moderna submitted "corrected" data and "agreed" that mRESVIA's "actual" VE was 78.7%. The documents and disclosures speak for themselves. None are offered for the truth of the underlying matters asserted therein, but to show what the FDA and Moderna indisputably did, and did not, say. *See* Doc. No. 81 (Defs. Opp. to Motion to Strike). And what they said is that the FDA asked for "updated" datasets—which it had not yet seen—to be extracted almost 15 months after-the-fact; Moderna complied with the FDA's request and extracted data that had previously been unavailable; and Moderna relayed its view that the DSMB-reviewed primary analysis from December 2022 was "accurate and valid" and should not be replaced by a "Retrospective" analysis from February 2024.

*Second*, under First Circuit precedent, Moderna had no duty to disclose even material back-and-forth with the FDA. Plaintiff pleads no facts showing a sufficiently clear FDA decision that contradicted, and rendered misleading, Moderna's disclosures. The challenged statements

---

[1] Defined terms as in Defendants' opening brief (Doc. No. 73). "Mem." refers to Defendants' opening brief. "Opp." refers to Plaintiff's Opposition (Doc. No. 75). "Ex." refers to exhibits appended to the Declarations of Adam Rosenfeld, executed Oct. 24, 2025 and Jan. 14, 2026 (Doc. Nos. 72, 80).

1

described what the "primary analysis" and "per protocol analysis," based on 64 cases and *NEJM*-published data, undisputedly found. They said *nothing* about communications with the FDA or the FDA's view of mRESVIA's VE. The absence of such disclosure also cannot plead scienter. Plaintiff has no response, except his mischaracterization of the ongoing regulatory dialogue.

*Third*, Plaintiff's insistence that there is one "correct" VE and that the Protocol "required" inclusion of 21 additional RSV cases in the prespecified "primary analysis" is wrong. The Protocol did not require inclusion of cases viewable only after study unblinding; that is the essence of a "post hoc" analysis. *But even if* Plaintiff were correct, Moderna held a different view of how, and what, data should be analyzed. That view was indisputably reasonable, as underscored by other regulatory approvals of mRESVIA with labeling at 83.7% VE. Under First Circuit precedent, Moderna's reasonable scientific opinion cannot provide the grist for a securities fraud claim.

At bottom, the Amended Complaint is exactly the kind of artful pleading precluded by the PSLRA. The "facts" Plaintiff proffers are a June 10 supposed "admission" from Hoge that—when read fully, not selectively—admitted nothing, and January 25 and February 26 communications that Plaintiff concedes he never saw before filing. The FDA's May 2024 Summary Basis for Regulatory Action ("Summary Basis") was silent on those earlier communications. The FDA's BLA Clinical Review Memorandum likewise does not say those earlier communications conveyed what Plaintiff claims. Defendants put the January and February communications before the Court; their plain terms show the opposite of what Plaintiff alleged. Plaintiff's only response is the circular assertion that this Court should ignore them. The Amended Complaint should be dismissed.

## REPLY BACKGROUND

The Opposition concedes the following, expressly or through non-opposition[2]:

---

[2] *See Ryan v. Newark Grp.*, __ F.Supp.3d __, 2025 WL 3777202, *5 (D. Mass. Dec. 30, 2025)

- In December 2022, the Protocol's pre-specified first interim analysis, based on data as of November 30, 2022, was performed. Doc. No. 74-2 (Plaintiff's submission of BLA Clinical Review Memorandum) at 21-22; Mem.6, 9. That same month, the DSMB reviewed the analysis and declared that the primary efficacy endpoints were met; per the Protocol, it was "considered the primary analysis." Doc. No. 74-2 at 3, 22, 29; Mem.6-7, 9-10. There were 64 cases that met *both* criteria for a "case" of RSV (symptoms plus PCR-confirmation), which resulted in 83.7% VE. Opp.5, 12; Mem.6, 9-10. Moderna remained blinded to all other data as the trial continued. Doc. No. 74-2 at 3, 13-15, 17; Mem.7. Additional pre-specified analyses were later conducted, based on datasets as of April 30 and June 24, 2023, and which were considered "supportive." Doc. No. 74-2 at 22-23, 27; Mem.6, 9.

- In January 2023, Moderna reported topline data from the primary analysis, showing 83.7% VE based on 64 cases as of November 30, 2022. Opp.5; Mem.7-8. The analysis was submitted to regulators, including the FDA in September 2023, Opp.5; Mem.8-9, and published in a peer-reviewed article in *NEJM* in December 2023, Opp.12; Mem.9-10.

- On January 25, 2024, the FDA asked Moderna to submit certain data. Plaintiff insists the FDA "rejected" the November 2022 dataset, required a "corrected" one, and "informed" Moderna that "FDA approval (and mRESVIA's product label) would be based on the corrected datasets," Opp.1-2, 5-7, 11-12, 15, 21, 25, 31-32. Neither the FDA's Summary Basis nor its BLA Clinical Review Memorandum on which Plaintiff claims to rely, Opp.11, 14, 21-22, 25-26, say the January 25 communication conveyed any of this. The Summary Basis is silent on the January communication. *See* Doc. No. 74-1 (Plaintiff's submission of Summary Basis). The BLA Clinical Review Memorandum says only that, on January 25, the FDA noted "inconsistencies" in "datasets" and asked for "updated" ones. Doc. No. 74-2 at 3, 31. Meanwhile, the plain terms of the January 25 Information Request ("IR") #19 email confirm that the FDA relayed concerns only with the 2023 datasets; requested "updated" datasets for each of November 2022 and April/June 2023 "irrespective of need for revision"; and nowhere questioned the primary analysis based on the November 2022 dataset. Mem.10-11. Nor did the email convey any decision regarding mRESVIA's approval. Plaintiff simply asks this Court to ignore the actual communication.[3]

- On February 13 and 26, 2024, Moderna extracted additional data and submitted it to the FDA. Plaintiff insists these were "corrected" datasets and Moderna's submission shows it "agreed" that the "correct" VE was 78.7%, Opp.1-2, 6-7, 11-12, 21, 25, 32-33. Again, the

---

(plaintiff's non-opposition to matters in dismissal motion constitutes concession); *accord Sigma-Aldrich v. Stonebrook*, 2025 WL 1927623, *7 (D. Mass. July 12, 2025); *see also Perkins v. City of Attleboro*, 969 F.Supp.2d 158, 177 (D. Mass. 2013).

[3] Plaintiff seizes on the email's request that Moderna note its updated datasets "replace" previously submitted ones. Opp.32-33; *see* Ex.20 (1/25/24 FDA Email), Doc. No. 72-20 at 5. That word did not convey some decision to "reject" the prior data, nor did it mean the data already submitted was somehow deleted. Indeed, the FDA requested a Summary of Changes Memo that "reflect[s] changes in the revised datasets," *id.*, and Moderna's February 26 submission repeated the primary analysis data, Ex.21 (Summary of Changes Memo), Doc. No. 72-21 at 14-15.

FDA's Summary Basis and BLA Clinical Review Memorandum say none of this. They say nothing about Moderna's position and do not purport to catalogue all Moderna submissions or objections. Meanwhile, the plain terms of Moderna's February 26 response to IR #19 confirm Moderna told the FDA the opposite: the "Primary Analysis of Efficacy" was performed "prospectively" using PCR data extracted in early December 2022;[4] a "Retrospective Efficacy Analysis" using data extracted in February 2024 included an additional 21 cases that were not in the prior data because they were not PCR-confirmed by the December 5, 2022 data snapshot;[5] and, in Moderna's view, the pre-planned primary analysis "originally declared" remained "valid and accurate." Mem.12-13. Again, Plaintiff simply asks this Court to ignore the actual submission.

- On March 12, 2024, Moderna submitted "Clarification Memo IR #19" to the FDA. The plain terms of the document reiterate Moderna's position that it was inappropriate to substitute the primary analysis "performed according to the pre-specified protocol" with the "retrospective," "post hoc" analysis requested by IR 19. Mem.13-14. Plaintiff asks this Court to ignore the submission because the FDA "seems to have no record" of it, Opp.2, 7, 32. That assertion is not based on any fact. Putting aside that Defendants already submitted a declaration authenticating it and its cover note, Doc. No. 72 at ¶23, Defendants now submit the FDA's filing receipt for it, Ex.43 (FDA 3/12/24 Receipt), Doc. No. 80-2.

- On May 31, 2024, the FDA approved mRESVIA with a label showing 78.7% VE, which Moderna announced the same day. Plaintiff claims Moderna's release "admitted" the "actual," "correct" VE was 78.7%, Opp.8, 11, but that is selective reading. Moderna repeated that the *NEJM*-published "primary analysis" found 83.7% VE, and added that a "follow-up analysis of primary endpoint," performed "during FDA review," included 21 cases that "were not confirmed until" after the cutoff date and showed 78.7% VE. Mem.15.

- On June 10, 2024, Hoge addressed mRESVIA's approval. Plaintiff again engages in selective reading, claiming Hoge "admitted" Defendants "agreed with the FDA's 78.7% VE," Opp.3, 9, 11, 19, 23, 31-32. Plaintiff omits Hoge's explanation that the FDA had "the

---

[4] The FDA's Pharmacovigilance Plan Review Memorandum confirmed that the "Primary Analysis of Efficacy" showed 83.7% VE. Ex.25 (FDA Pharmacovigilance Plan Review Memo), Doc. No. 72-25 at 7. Plaintiff wrongly seeks to ignore this document as dated September 11, 2023, Opp.n.10. That is the "Submission date" of the BLA, Doc. No. 72-25 at 1, which Plaintiff admits, ¶53. Regardless, Plaintiff concedes the DSMB-reviewed, *NEJM*-published primary analysis, based on 64 cases, showed 83.7%. Opp.5, 12.

[5] Plaintiff wrongly suggests Moderna violated the Protocol by extracting PCR data five, not 14, days after data cutoff. Opp.n.12. Plaintiff conflates the "case" definition requiring symptom onset within 14 days of a PCR test, Doc. No. 74-2 at 30, with the date a snapshot of all PCR results was taken for the pre-specified analysis. Nor did the FDA's Statistical Review accuse Moderna of a Protocol violation, Opp.n.12—a serious charge that would have merited some discussion. Rather, the FDA observed that the 21 additional cases "were not identified in the original IA because RT-PCR results were not available at the time" due to "operational reasons" (*i.e.* no PCR confirmation at time of data snapshot). Ex.26 (FDA Statistical Review), Doc. No. 72-26 at 6, 19, 23.

4

privilege of being able to look retrospectively and decide they want[ed] to include" 21 cases that were confirmed only after data cutoff and to which Moderna was previously blinded. Mem.16. Hoge described Moderna's agreement to submit the requested data and include 78.7% VE on the label—not some agreement that the FDA's approach was "correct" or required by the Protocol. Mem.16.[6]

- Multiple other regulators, including for the European Union and Canada, approved mRESVIA with a label showing 83.7% VE. Mem.18.

Finally, Plaintiff wrongly insists the 21 additional cases were "rightly" and "required to be" included in the "primary analysis" conducted "per protocol," Opp.1-3, 6-7, 14, 21-22, 31. Even putting aside other mRESVIA approvals at 83.7% VE, Plaintiff wrongly seizes on the BLA Clinical Review Memorandum's observation that there were an additional 21 cases with "*onset* prior to data cutoff which met the study case definition," Opp.1, 6-7, 13, 25 (citing Doc. No. 74-2 at 3, 31). The memo recognized that "[t]he primary analysis required that cases be confirmed by RT-PCR" testing and that the "case" definition required *both* symptom onset "PLUS" PCR confirmation. Doc. No. 74-2 at 20. The memo was silent on the fact that—as noted in the FDA's Statistical Review, Mem.17, and Plaintiff concedes, Opp.5, 12—there was no PCR confirmation of those 21 cases when the primary analysis was conducted and declared in December 2022, and thus they were not "cases" at that time. The 21 cases fit the "case" definition *only if* one looked retrospectively, using data extracted almost 15 months after-the-fact and to which Moderna did not earlier have access.[7] Meanwhile, neither the Summary Basis nor the BLA Clinical Review Memorandum claim the FDA's approach was Protocol-required, or that what they set forth was

---

[6] Plaintiff asserts Hoge's use of the past tense—the "primary analysis *had been* 83.7%"—conveyed some "admission," Opp.32 & n.15. That is specious. Hoge was describing an event from December 2022. He also said "[t]he label from the FDA approval process *was* 78.7% efficacy." Ex.16 (6/10/24 Company Conf. Tr.), Doc. No. 72-16 at 9 (emphasis added).

[7] Indeed, both the Summary Basis and the BLA Clinical Review Memorandum confirm that the 78.7% VE is based on a dataset with "data cutoff 30 Nov 2022; *data extraction 13 Feb 2024*." Doc. No. 74-1 at 24 (Table 9 "Source") (emphasis added); Doc. No. 74-2 at 29 (Table 8 "Source").

5

"the primary analysis" per the Protocol. *See, e.g.*, Doc. No. 74-1 at 23-24 (describing "Efficacy Analyses"); Doc. No. 74-2 at 3 ("updated data were used in the primary and additional efficacy analyses" set forth), 31 ("primary efficacy analyses reflecting updated datasets" set forth), 74 ("primary efficacy analysis").[8]

## ARGUMENT

### I.    PLAINTIFF FAILED TO PLEAD A SECTION 10(b) CLAIM

#### A.    Plaintiff Failed to Identify Any False or Misleading Statement

The Opposition ignores the limited nature of the challenged statements: that the "primary analysis" and "per protocol analysis," which Defendants noted were based on 64 cases and *NEJM*-published data, showed 83.7% VE. Mem.11-12, 14-15, 20. Those statements were undisputedly accurate. Opp.5, 12; Mem.20.

Plaintiff instead attempts to recast the statements, claiming that "primary analysis" and "per protocol analysis" refer to "quantifying data for the principal analysis used by the FDA for approval," Opp.13. The disclosures and their "context," *id.*, said no such thing. Moderna said nothing about its dialogue with any regulator, except its FY2023 Form 10-K noted various regulatory applications had been filed around the world; (correctly) predicted approvals in 2024; and warned that approvals were not guaranteed and regulators could interpret data differently or require additional data or analyses. Mem.11-12, 14-15.[9] Otherwise, Plaintiff simply repeats his

---

[8] Plaintiff disputes that the FDA used a "retrospective" or "post hoc" approach because neither the Summary Basis nor the BLA Clinical Review Memorandum use those words, Opp.2, 7, 14. Those semantics fail. By definition, a request made almost 15 months after the pre-specified "primary analysis" was declared, to pull and include additional data previously unavailable to Moderna, is retrospective and post hoc. *See Shash v. Biogen*, 84 F.4th 1, 17 (1st Cir. 2023) (describing post hoc analysis of expanded data set). The FDA's memos nowhere disavow the "retrospective," "post hoc" nature of its approach, and Moderna consistently so described it. Mem.12-17.

[9] Defendants do not claim these warnings served as a safe harbor, Opp.16, but rather that, per First Circuit precedent, they undermine an inference of scienter. *Infra*.14.

incorrect assertion that the referenced "primary analysis" and "per protocol analysis" required consideration of the additional 21 cases leading to 78.7% VE, Opp.11-12. *See supra*.5-6.

Nor does the Opposition solve Plaintiff's timing problem. Plaintiff points to no *facts*, rather than mischaracterization, showing that before the challenged statements were made, the FDA had clearly conveyed a decision to reject the DSMB-reviewed primary analysis and require use of later-extracted data. Mem.21. Plaintiff's own cases, Opp.12-13, require such pleaded facts.[10] Plaintiff again insists that the FDA's January 25 email was that "rejection" and clear communication, Opp.12, 24-25 & n.8. Even putting aside the email's plain terms, *supra*.3, the FDA could not have so decided and conveyed, *as the FDA had not yet seen the updated data*. Nor did Moderna's responsive submissions convey that Moderna "learned" the "correct[]" VE was 78.7%, Opp.12, 25. They say the opposite. *Supra*.3-4. And neither the Summary Basis nor the BLA Clinical Review Memorandum identify when the FDA reached its views of mRESVIA's VE or labeling, let alone conveyed them to Moderna. That leaves Plaintiff pointing only to issuance of those May-end documents, which is classic fraud-by-hindsight. Mem.20-21.

Apparently conceding he identifies no document or disclosure indicating when, before May 31, the FDA conveyed to Moderna its decision to use a retrospective approach, Plaintiff speculates that Hoge "presumably allud[ed] to a non-public communication Moderna had with the FDA immediately following February 13, 2024," Opp.9. Plaintiff proffers no source for this speculation

---

[10] *See In re Ariad Pharms. Sec. Litig.*, 842 F.3d 744, 752-53 (1st Cir. 2016) (defendants expressed optimism for approval with "favorable label" weeks after FDA "reject[ed] [defendants'] proposed label" and directed them "to submit a revised label with a black box warning"); *In re Transkaryotic Therapies Sec. Litig.*, 319 F.Supp.2d 152, 156-57, 159 (D. Mass. 2004) (defendants touted drug's efficacy and described approval as "a when not if proposition," but FDA Complete Review Letter had "stated bluntly and at length" that drug "failed to demonstrate efficacy," revised analyses from trial "would not address the problems with efficacy," and defendants "would have to start over from scratch").

or even the "who, what, where, and when," Opp.10, of it. It is precisely the speculative pleading foreclosed by the PSLRA. While Plaintiff may not need to plead "evidence," Opp.n.6, he must plead facts, not empty assertions. Mem.19.

Plaintiff falls back on his insistence that Moderna had to disclose its ongoing dialogue with the FDA, Opp.15-16. That runs headlong into two lines of well-settled precedent. *First*, Section 10(b) imposes no freestanding duty to disclose even material information. Mem.22-23 & n.18. *Second*, there is no duty to disclose ongoing dialogue, or even a "dispute," Opp.24, with the FDA, unless a plaintiff can point to a clear FDA communication that sufficiently contradicted, and rendered misleading, a defendant's disclosures. Mem.23, 30 & nn.19, 32 (citing cases).[11] That is because, as courts have recognized, regulatory concerns may well be addressed through the dialogue, while ongoing public disclosure would be disruptive, if not misleading. Again, Plaintiff's cases, Opp.15-16, 24, apply the same requirements.[12] Absent mischaracterization, Plaintiff does

---

[11] *See also Goucher v. Iterum Therapeutics*, 648 F.Supp.3d 962, 977-78 (N.D. Ill. 2022); *Hoey v. Insmed*, 2018 WL 902266, *14-15 (D.N.J. Feb. 15, 2018); *Gillis v. QRX Pharma*, 197 F.Supp.3d 557, 584-85 (S.D.N.Y. 2016); *In re EDAP TMS Sec. Litig.*, 2015 WL 5326166, *12 (S.D.N.Y. Sept. 14, 2015); *Noble Asset Mgmt. v. Allot Therapeutics*, 2005 WL 4161977, *7 (D. Colo. Oct. 20, 2005).

[12] *See Sanders v. AVEO Pharm.*, 2015 WL 1276824, *4, 6-8 & n.1 (D. Mass. Mar. 20, 2015) (FDA expressed "serious criticism" by postponing NDA filing and recommending second trial); *In re Delcath Sys. Sec. Litig.*, 36 F.Supp.3d 320, 326-27, 331-32, 335-36 (S.D.N.Y. 2014) (FDA expressed "extreme negativity" to application; company also omitted negative control group data to which it had access all along); *Transkaryotic*, 319 F.Supp.2d at 156-57, 159 (FDA Complete Review Letter stated "bluntly and at length" that company "would have to start from scratch"); *In re Sepracor Sec. Litig.*, 308 F.Supp.2d 20, 34 (D. Mass. 2004) (company omitted information on cardiac side effects that fell under FDA's "zero tolerance" policy); *In re Biogen Sec. Litig.*, 179 F.R.D. 25, 30-31, 36 (D. Mass. 1997) (company described trial as "successful" but omitted it failed to meet primary endpoint and FDA warned that lack of statistical difference between dose groups "raises concern"); *see also State Tchrs. Ret. Sys. of Ohio v. Charles River Lab'ys Int'l*, 152 F.4th 1, 10-11 (1st Cir. 2025) (company disclosed it did not work with indicted suppliers while omitting it did so through intermediary); *Schueneman v. Arena Pharms.*, 840 F.3d 698, 707-08 (9th Cir. 2016) (company claimed "all" animal studies supported approval but knew some did not and FDA raised concerns about studies). *Gerneth v. Chiasma*, 2018 WL 935418, *3-8 (D. Mass. Feb. 15,

not identify such a communication from the FDA before end of May, after all challenged statements were made.

## B.    The Challenged Statements Are Inactionable Opinions

Plaintiff nowhere addresses the precedent holding that interpretation of clinical trial data is opinion. Mem.23 & nn.20-21. Instead, Plaintiff insists (i) Moderna "presented the 83.7% VE as an established fact" and "objective data calculation[]" Opp.2, 17, and (ii) the "actual," "correct" VE is 78.7%, Opp.2, 8, 11, 35. Both are wrong. Moderna, and the FDA, presented "estimates" of VE, Doc. No. 74-2 at 3, based on a view of clinical trial data that in turn required interpretation and analysis. This case readily so highlights, as the *NEJM*-published primary analysis was never corrected or withdrawn, and regulators approved mRESVIA with labeling showing 83.7% VE.[13]

With the primary analysis from December 2022 undisputedly having shown 83.7% VE, Opp.5, 12, what Plaintiff really challenges are the *judgments* about how VE should have been analyzed and on which data it should have been based. Moderna (and other regulators) believed it appropriate to rely on the data available at the time of the pre-specified primary analysis, and inappropriate to rely on an analysis conducted almost 15 months after-the-fact, using data previously unavailable. The FDA disagreed and required the latter. That is legitimate scientific disagreement, and whether the FDA was "correct" does not plead securities fraud. Mem.23 & n.21. Plaintiff's only response is to recycle his false assertion that Moderna "corrected" the November 2022 dataset and "agreed" with the FDA, Opp.19.

Nor does Plaintiff plead facts indicating a basis for opinion liability under *Omnicare v.*

---

2018), involved claims under Section 11 of the Securities Act of 1933, which *does* impose an independent duty to disclose material information.

[13] Moderna's opinion did not need to be "qualified," Opp.17, with any specific wording. *See Pizzuto v. Homology Meds.*, 2024 WL 1436025, *13 (D. Mass. Mar. 31, 2024) (phrases like "we think" or "we believe" are "not necessary" to "make a statement an opinion").

*Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). Mem.24. Plaintiff again proffers only his false assertions that the FDA's January 25 email "rejected" the November 2022 dataset underlying the primary analysis, and Moderna then supposedly "corrected" it and "agreed" that mRESVIA "had a 78.7% VE," Opp.18-19. Without those, Plaintiff cannot plead, as he must, facts showing Defendants disbelieved their stated opinions or that their opinions did not fairly align with the facts known to them after reasonable inquiry. Mem.24; Opp.18.

Plaintiff cites *Alaska Elec. Pension Fund v. Pharmacia*, 554 F.3d 342, 344-46, 352 (3d Cir. 2009), Opp.19, 23, but that case is readily distinguished. There, defendants published "truncated" results from only six of 13 months of a completed trial and used "post hoc changes to the protocol," when they knew the remaining long term data undermined the purported safety results. Here, Moderna published in *NEJM*, and referenced in the challenged statements, all data available to it when the primary analysis was conducted and on which that analysis was based. Meanwhile, *Shash*, Opp.18-19, is fatal to Plaintiff. The only statement found actionable was defendants' representation that "all data" was "consistent with" their view of efficacy, when there was undisclosed, inconsistent subgroup data. 84 F.4th at 12-13. Here, Moderna undisputedly disclosed all data underlying the *NEJM*-published primary analysis described in the challenged statements. Regardless, Defendants made no "consistent with all data" representation. *Shash* otherwise affirmed this Court's dismissal of the remaining statements because (i) plaintiff pleaded no facts showing defendants "honestly believed" an FDA reviewer's contrary interpretation over their own, and (ii) defendants' analysis was not "fully discredited" by the undisclosed data. *Id.* at 16-17.

### C.   Plaintiff Failed to Plead the Requisite Strong Inference of Scienter

#### 1.   Plaintiff Failed to Plead Motive

Plaintiff confirms his first proffered motive is to ensure a successful product: since

mRESVIA would not be first to market, Defendants allegedly needed to "differentiate" mRESVIA through "top-of-market" VE to be "commercially viable," Opp.1, 3, 5, 8, 27-28, 32. The relevant standard isn't whether such supposed motive is "specific to Moderna," Opp.3, 29, but whether it could apply to *any* pharmaceutical company. That's why the First Circuit has rejected this same motive, including in the context of "first-mover advantage," as too generic. Mem.25.[14]

This supposed motive also piles speculation on speculation. Plaintiff references "numerous studies" supporting a first-to-market advantage for vaccines, Opp.4, 28. But he abandons the L.E.K. publication and the McKinsey study, which nowhere addresses vaccines, says any advantage is "weak" and "actually vanishes" where, as here, lead time is under two years. Mem.26; Ex.38 (McKinsey Publication), Doc. No. 72-38. Even assuming a need to differentiate, Plaintiff proffers no facts indicating Moderna believed it needed to do so *through the very highest VE*, especially given the small difference of 4% from Arexvy's 82.6% VE, Mem.7, and where mRESVIA undisputedly had other differentiators (pre-filled syringe, bundling, and better tolerability), Mem.26 & n.28. Indeed, Plaintiff's conjecture is belied by the financial results he pleads: Pfizer's Abrysvo had the lowest VE (67%), Mem.7, but its 2024 RSV revenue exceeded both GSK's and Moderna's, ¶78; Opp.9. Meanwhile, Plaintiff fails to identify a single instance where Moderna expressly described mRESVIA as having highest or "top-of-market" VE, Opp.28. Moderna's disclosures instead emphasized different advantages. *See* Mem.n.28.

The remaining proffered motives—to replace declining Spikevax revenue, validate Moderna's mRNA thesis, and avoid a weak bargaining position with buyers, Opp.3, 27, 29—rely

---

[14] Plaintiff fails to distinguish *Brennan v. Zafgen*, 853 F.3d 606, 616 (1st Cir. 2017), and *Kader v. Sarepta Therapeutics*, 887 F.3d 48, 60 (1st Cir. 2018), Opp.n.21, where the facts alleged were stronger on motive: a "one-drug company" and one "generating no significant revenue." Neither is the case here.

11

on the same faulty speculation that mRESVIA was "inferior" due to a mere 4% VE difference. Mem.27. Plaintiff so concedes.[15] These motives are also no different from the generic motive to have successful products and be financially successful. Plaintiff's cases, Opp.28, do not address these purported motives.[16] Plaintiff also fails to address the First Circuit precedent requiring allegations of extreme financial distress when these motives are proffered. Mem.27.

Finally, contrary to Plaintiff's assertion, First Circuit precedent holds that the absence of stock sales undermines scienter, Mem.25, even if it isn't "fatal" in every case, Opp.29.[17] But it is fatal here. Moderna undisputedly could not market or sell mRESVIA absent government approval—which, per Plaintiff, would necessarily come at 78.7% VE. In the absence of insider sales *before* that supposedly inevitable disclosure, Plaintiff cannot point to any "concrete benefits" to defendants from the challenged statements. Mem.25 (citing cases).

**2.     Plaintiff Failed to Plead Conscious Intent to Defraud or Recklessness**

Plaintiff concedes he proffers no confidential witness statements, and Hoge made no "admission," Opp.21, that was contrary to the challenged statements. *Supra.*4-5. That leaves Plaintiff relying on the Summary Basis and BLA Clinical Review Memorandum, Opp.21-22, but those documents—like the FDA's January 25 email and Moderna's February 26 submission

---

[15] Plaintiff instead wrongly insists that the question of what buyers value should be resolved later, Opp.29. The PSLRA requires *him* to plead facts. He proffers none, and the UCLA study, Opp.29, does not purport to predict vaccine buyers' decision-making. Mem.28; *see* Ex.39 (UCLA Paper), Doc. No. 72-39.

[16] In *Collier v. ModusLink Glob. Sols.*, 9 F.Supp.3d 61, 73 (D. Mass. 2014), the alleged fraud enabled defendants to defend against a proxy contest and misuse company funds for personal purposes. Neither *Charles River*, 152 F.4th at 12-13, nor *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite*, 22 F.4th 1, 8-10 & n.3 (1st Cir. 2021), addressed motive allegations.

[17] Plaintiff's assertion that the absence of sales is "consistent with concealing a fraud," Opp.29-30, has been rejected as "paradoxical" and "devoid of merit." *Quinones v. Frequency Therapeutics*, 665 F.Supp.3d 156, 175-76 (D. Mass. 2023), *aff'd*, 106 F.4th 177 (1st Cir. 2024).

referenced therein—do not say what Plaintiff claims and instead preclude any assertion that Moderna "agreed" or "knew" that the "actual," "correct" VE was 78.7%. *Supra*.3-4. That isn't "counternarrative," Opp.22, but a description of the relevant documents' plain terms.

Nor does Plaintiff provide an adequate response to the many deficiencies that preclude or undermine his scienter allegations:

*First*, the same timing problem plagues Plaintiff's scienter allegations. Mem.30; *supra*.7. Neither the Summary Basis nor the BLA Clinical Review Memorandum, Opp.24-25, say *when* the FDA conveyed to Moderna a decision to require labeling based on a retrospective analysis of VE. The FDA's January 25 email and Moderna's responses likewise convey no such communication. *Supra*.3-4. Defendants do not "stretch the imagination" or go "out-of-bounds" by claiming "maybe the FDA was entertaining two datasets," Opp.22. The salient inquiry is what Defendants knew, based on what was communicated to them, and when. *See In re Biogen Sec. Litig.*, 857 F.3d 34, 43 (1st Cir. 2017).

*Second*, Plaintiff concedes that, under First Circuit precedent, legitimate scientific disagreement cannot plead scienter. Mem.29; Opp.23. His only response is to recycle his false claim that there was no disagreement, Opp.23. *See supra*.3-4, 9.

*Third*, Plaintiff cannot circumvent First Circuit precedent holding that non-disclosure of ongoing FDA dialogue does not plead scienter, particularly where Moderna did not comment on the FDA review process. Mem.30 & n.32; *see also supra*.8 & n.11. This precedent does not turn on the supposed materiality of the dialogue or if there was "any dispute" with the FDA, Opp.24. Rather, Plaintiff must plead facts showing a clear FDA communication that sufficiently contradicted defendants' affirmative statements so as to render them knowingly or recklessly

13

misleading. Plaintiff has not done so. Again, Plaintiff's own cases so hold. *See supra.*8 & n.12.[18]

*Fourth*, Moderna's warnings, including that the FDA could take a different view of the ConquerRSV trial data, Mem.8, 12, 30, 33 & nn.8-11, 33, undermine any scienter inference. That risk was indeed "as-yet-unrealized," Opp.16-17, 25. Contrary to Plaintiff's mischaracterization, Moderna conveyed to the FDA its position in February and March that the DSMB-reviewed, *NEJM*-published primary analysis remained "valid and accurate," and Plaintiff pleads no *facts* indicating that the FDA rendered and conveyed its contrary decision before May-end. *Supra.*3-4, 7. Courts repeatedly rely on similar forward-looking warnings and disclaimers in finding any scienter inference undermined. Mem.30 & n.33 (citing cases); *Celano v. Fulcrum Therapeutics*, 2025 WL 928783, *12 (D. Mass. Mar. 27, 2025).[19]

*Fifth*, Moderna undisputedly disclosed the Summary Basis with the FDA's labeling decision at 78.7% VE the same day it was issued, undermining scienter. Mem.15, 31 & n.34. Plaintiff merely recycles his false assertion and mischaracterization that VE was earlier "corrected" in February, Opp.26.

*Sixth*, Plaintiff insists Moderna's statements about mRESVIA's VE were "highly material," Opp.26. The salient point is that *debatable* materiality—78.7% vs. 83.7% VE, with undisputed

---

[18] Nor can Plaintiff distinguish this precedent by claiming the FDA dialogue in those cases involved "intricate" or "immaterial" back-and-forth, Opp.24. For example, *Yan v. ReWalk Robotics*, 973 F.3d 22, 40 (1st Cir. 2020), involved non-disclosure not just of "run-of-the-mill back-and-forth," but a warning letter in which the FDA informed defendants that their noncompliance rendered the device misbranded.

[19] Plaintiff's cases, Opp.26, are inapposite. In *Charles River*, 152 F.4th at 12-13, defendants warned only that the entire industry faced a supply chain risk, without saying the company did and that it "knew that its supply was coming from the entities subject to investigation, seizure, and indictment." In *Brennan v. Zafgen*, 199 F.Supp.3d 444, 463 (D. Mass. 2016), *aff'd*, 853 F.3d 606 (1st Cir. 2017), defendants had warned they may not disclose all serious adverse events, but then "started down the road of disclosure" by disclosing two events in an allegedly misleading way and thus their earlier warning could not be a shield.

other differentiating factors—undermines any scienter inference. Mem.31 & n.35.

That leaves Plaintiff's resort to "core operations," Opp.3, 30-31. The Opposition falsely claims Hoge said "mRESVIA was Moderna's core operations [sic]," Opp.30. The Amended Complaint admits Hoge instead said, "our core underlying business right now is only COVID," predicting "in a couple of years, it will be flu, RSV in combinations." ¶¶34, 109. Nor does mRESVIA's "advanced" development stage, Opp.30-31, render it core, as other products were in or had completed Phase 3 testing. Mem.5.[20] Regardless, Plaintiff concedes that "core operations" requires facts showing that the attention paid would have conveyed a "glaring" incongruity between undisclosed information and defendants' statements (*i.e.*, a "plus" factor). Mem.32 & n.39; Opp.31; *Shash*, 84 F.4th at 19. Plaintiff proffers "monitor[ing] the FDA approval process," and Hoge's supposed "admission" that Moderna "agreed" VE was 78.7%, Opp.31 & n.23.[21] The latter is false, *supra*.4-5, and the former insufficient, *Pizzuto*, 2024 WL 1436025, *18; *Quinones*, 665 F.Supp.3d at 180; *In re iRobot Sec. Litig.*, 527 F.Supp.3d 124, 140-41 (D. Mass. 2021).[22]

Finally, as for a holistic view of Plaintiff's scienter allegations, Plaintiff again proffers faulty speculation and mischaracterization of the documents on which he relies, Opp.31-32. Defendants do not offer "jury argument," Opp.33, but the requisite analysis of competing

---

[20] Plaintiff concedes Moderna sought to have "multiple FDA approved products" and not be a "one-drug company." Opp.4; Mem.4-5.

[21] Plaintiff claims Defendants "regularly spoke" about monitoring the trial and FDA process, Opp.n.23, but identifies no such statements.

[22] Plaintiff's cases, Opp.30-31, pleaded "plus" factors. *See Carbonite*, 22 F.4th at 1, 9-10 (defendants claimed product was "super strong" but it "ha[d] never once done what it [was] supposed to do" and employees "had reported internally … that the product was not ready for market"); *Dahhan v. OvaScience*, 321 F.Supp.3d 247, 255 (D. Mass. 2018) (defendants admitted tracking data that was inconsistent with efficacy representations and changed reporting to conceal inconsistent information); *Transkaryotic*, 319 F.Supp.2d at 156, 159, 162 (defendants described approval as "a when not if" proposition but FDA had said "studies did not show efficacy" and company "would have to start over from scratch").

inferences from documents incorporated in the Amended Complaint and matters of which judicial notice may be taken. Mem.19, 32-33; *Tellabs v. Makor Issues & Rts.*, 551 U.S. 308, 322-24 (2007). Those documents, which speak for themselves, show that any inference of fraud is hardly plausible, let alone cogent and compelling. They instead show Moderna followed the Protocol, engaged in good faith with the FDA, and secured mRESVIA's approval to alleviate suffering from RSV. Mem.32-33. Ultimately, Plaintiff provides no response to why, as the First Circuit asked in a similar case, Moderna would announce false "great" results that would shortly require correction with "good" ones, jeopardizing credibility with regulators and the market. Mem.33.

### D.    **Plaintiff Failed to Plead Loss Causation**

Plaintiff wrongly insists that Moderna's May 31 press release "corrected" the supposedly "concealed" truth that (i) the FDA "refused to accept" Moderna's November 2022 dataset underlying the primary analysis showing 83.7% VE, and (ii) mRESVIA "had a lower VE," Opp.34.

The Amended Complaint pleads neither, nor could it. Mem.34. The former relies not on facts but mischaracterization of the January, February, and March 2024 documents on which Plaintiff necessarily relies. The FDA's Summary Action and BLA Clinical Review Memoranda likewise do not say that the FDA had so "refused" on January 25. *Supra*.3. As for the latter, there is no "correct" VE. *Supra*.5-6, 9. Moderna's May 31 release reiterated mRESVIA's 83.7% VE determined in the *NEJM*-published primary analysis, and also reported a new development: that the FDA had decided to base its approval on the 78.7% VE determined in a "follow-up analysis" that included cases not PCR-confirmed before the data cutoff. *Supra*.4.

Plaintiff does not attempt to address Defendants' cases, Mem.34-35, except to invite this Court to disregard their dismissals on separate, independent loss causation grounds, Opp.34.[23]

---

[23] Plaintiff's cases, Opp.34, involved disclosures that revealed potential fraud. *Shih v. Amylyx*

16

### E.    Plaintiff Failed to Plead Scheme Liability

Plaintiff concedes the Amended Complaint nowhere details the supposed "scheme." Mem.35; *see* Opp.34-35. The Opposition insists Defendants "concealed from investors" that the FDA had "identified deficiencies with the datasets," Opp.35. That describes alleged misstatements and omissions, which are insufficient for scheme liability. Mem.35.[24] Regardless, neither falsity nor the requisite scienter for scheme liability are adequately alleged. *Supra* Point I.A, C.

## II.    PLAINTIFF FAILED TO PLEAD A SECTION 20(a) CLAIM

Without a Section 10(b) violation, Plaintiff's Section 20(a) claim fails. Mem.35; Opp.n.24.

### CONCLUSION

The Amended Complaint should be dismissed with prejudice. Plaintiff already amended once and his perfunctory request for leave to further amend, Opp.n.24, comes long after case commencement and well after Defendants' motion to dismiss, and without any explanation of how the Amended Complaint's deficiencies could or would be cured. *See Fire & Police Pension Ass'n of Colo. v. Abiomed*, 778 F.3d 228, 247 (1st Cir. 2015); *Aca Fin. Guar. v. Advest*, 512 F.3d 46, 57 (1st Cir. 2008); *Celano*, 2025 WL 928783, *22.

Dated: January 14, 2026                      Respectfully submitted,

                                             /s/ Sara Jane Shanahan
                                             Sara Jane Shanahan (BBO# 567837)
                                             Mariem Marquetti (BBO# 709438)
                                             SHERIN AND LODGEN LLP
                                             One Lincoln Street

---

*Pharms.*, __ F.Supp.3d __, 2025 WL 2807756, *3-5 (D. Mass. Sept. 30, 2025) (release revealed high patient discontinuation rates, contradicting prior claims of growth potential); *Brumbaugh v. Wave Systems*, 416 F.Supp.2d 239, 246-47, 255-56 (D. Mass. 2006) (release announced SEC investigation of prior disclosures that suggested future revenue stream from licensing partnership that, in fact, was non-exclusive and had no minimum licensing requirements).

[24] In *SEC v. Liberty*, 2021 WL 664834, *5 (D. Me. Feb. 19, 2021), and *SEC v. Sharp*, 626 F.Supp.3d 345, 366 (D. Mass. 2022), Opp.35, the SEC alleged conduct beyond alleged false statements and omissions.

17

Boston, MA 02111
Telephone: (617) 646-2000
sjshanahan@sherin.com
mmarquetti@sherin.com

Boris Feldman (*pro hac vice*)
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 461-8200
boris.feldman@freshfields.com


 */s/ Meredith Kotler*
Meredith Kotler (*pro hac vice*)
Adam Rosenfeld (*pro hac vice*)
FRESHFIELDS US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
meredith.kotler@freshfields.com
adam.rosenfeld@freshfields.com

*Attorneys for Defendants*

18

## **CERTIFICATE OF SERVICE**

I certify that this document filed through the EF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date specified below.

Dated:  January 14, 2026

/s/ *Meredith Kotler*
Meredith Kotler

19