UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASON WENTZ, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MODERNA, INC., STÉPHANE BANCEL, JAMES M. MOCK, and STEPHEN HOGE,<br><br>*Defendants.* | No. 24-cv-12058-IT |

**ORDER ON PLAINTIFF'S MOTION TO STRIKE EXHIBITS**

LEVENSON, U.S.M.J.

Plaintiff's claims in this case are based on alleged misrepresentations in public announcements by Moderna, Inc. ("Moderna") and its senior officers regarding clinical trial data measuring the efficacy of Moderna's RSV vaccine, mRESVIA.

Defendants have moved to dismiss Plaintiff's claims and have offered, in support of their motion to dismiss, various documents to support their position. These are marked as Exhibits 1–41 (Docket Nos. 72-1 through 72-41). Two additional documents, which Defendants offered in response to Plaintiff's motion to strike, are marked as Exhibits 42 and 43 (Docket Nos. 80-1, 80-2).

Although Plaintiff agrees that some of these documents are appropriate for consideration at this stage of the case, Plaintiff has moved to strike various of Defendants' proposed exhibits. Plaintiff filed a Motion to Strike on December 8, 2025, and submitted both a memorandum and reply brief in support. Docket Nos. 76–77, 86. Defendants submitted an opposition. Docket No. 81.

For the reasons discussed below, Plaintiff's Motion to Strike will be allowed.

1. *Correspondence between the FDA and Moderna (Docket Nos. 72-20 through 72-22, 80-1, and 80-2)*

Plaintiff objects to considering these documents at the motion to dismiss stage because they are not part of the Amended Class Action Complaint (Docket No. 62) ("Complaint"). Whether these documents should be considered as "incorporated by reference" in the Complaint is a close call.

Central to Plaintiff's claim is an allegation that on January 25, 2024, the FDA requested "corrected data for the ConquerRSV Trial." Complaint ¶¶ 56, 58. Given that this communication is at the heart of Plaintiff's claim, it seems ironic that Plaintiff would insist on excluding from the Court's consideration Exhibit 20 (Docket No. 72-20), which appears to be the very email by which the FDA communicated its request. As such, Exhibit 20 would seem to fall squarely within the First Circuit's observation that "[w]hen . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document *(the authenticity of which is not challenged)*, that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (emphasis added).

While Plaintiff's claim is "expressly linked to" and obviously dependent upon the January 25 email, the rule of incorporation by reference applies only when there is no challenge to the authenticity of the document. Plaintiff acknowledges that "Exhibits 20 and 21 purport to be private communications between the FDA and Moderna," and that "[t]he dates of these communications match dates of communications cited in the BLA Review Memo." Docket No. 77 at 9. Nonetheless, Plaintiff challenges the authenticity of these exhibits "because [they] are not public." *Id.*

Plaintiff asserts a generalized challenge to the authenticity of Exhibit 20 and offers no particularized reason to doubt that Exhibit 20 is what Defendants represent it to be. At oral argument, Plaintiff explained his position as follows:

> THE COURT: They have not yet been authenticated through the Rules of Evidence. You don't seriously contest the authenticity, do you?
>
> MR. BIGIN: So I would like to be heard a little bit on that.
>
> THE COURT: All right.
>
> MR. BIGIN: Authenticity has to have knowledge of the actual document, right? That's 901 Federal Rules of Evidence.
>
> THE COURT: But your opponents are officers of the court. You're suggesting that they've forged a document that has the same date and time and they've dropped it in and it just happens to match the dates you describe in the complaint?
>
> MR. BIGIN: I wouldn't say that to them. What I would say though is that they're not the FDA. So they have no knowledge that those are the actual documents that were used by the FDA in the review memo.

Docket No. 91 at 27:15–28:5.[1]

Plaintiff's position seems short-sighted. To the extent that these documents are germane to the case, it seems all but inevitable that they would come before the Court in due course. That said, a motion to dismiss is not the occasion for deciding disputes about authenticity. To give Plaintiff his due, there is no suggestion that Plaintiff was privy to the communications in question, or that Plaintiff saw or possessed these documents before Defendants offered them as exhibits.

---

[1] To the extent that Plaintiff's argument rests on the proposition that a communication cannot be authenticated by the *recipient* of that communication, it fails of its own weight. *See, e.g.*, *Fenje v. Feld*, 301 F. Supp. 2d 781, 809 (N.D. Ill. 2003) ("E-mail communications may be authenticated as being from the purported author based on an affidavit of the recipient . . . ."), *aff'd*, 398 F.3d 620 (7th Cir. 2005).

The great risk, of course, is that the Court could be misled about a key allegation in the Complaint. As Defendants point out, Exhibit 20, in particular, appears to gravely undercut several of Plaintiff's factual claims. The risk of misunderstanding, however, is mitigated in this case by Plaintiff's acknowledgement that his allegations rest, not on the actual communications between FDA and Moderna, but on a subsequent public announcement by the FDA, from which Plaintiff has drawn inferences about those prior communications.

With some prompting from the Court, Plaintiff's counsel acknowledged that the Complaint's assertion that the FDA in January 2024 requested "corrected" data was not based on any direct factual allegation, but was Plaintiff's characterization:

> MR. BIGIN: . . . When we came to January 24th and the FDA had been dealing with Moderna for a while and said that there were serious concerns with the data --
>
> THE COURT: Did they say that?
>
> MR. BIGIN: So I believe that they said there were issues that need -- I don't want to talk about some of the letters and make the same kind of --
>
> THE COURT: Right, but you haven't alleged that FDA said there are serious concerns with the data either. So if we're not gonna --
>
> MR. BIGIN: Correct --
>
> THE COURT: -- look beyond the curtain. You allege that something was said between FDA and Moderna about the dat[a].
>
> MR. BIGIN: Yup.
>
> THE COURT: And that's about all you allege?
>
> MR. BIGIN: No.
>
> THE COURT: What more do you allege?
>
> MR. BIGIN: We allege that updated datasets are required.
>
> THE COURT: Okay. Something was said and FDA said, give us more.
>
> MR. BIGIN: Yeah. Well, update and correct, not give us more, update and correct these datasets.

THE COURT: Where's the allegation that says correct?

MR. BIGIN: I hope I didn't misspeak. I'm looking at paragraph 81, but I want to make clear as to what the FDA actually said in our actual report. I want to make sure I go block quote for that. I think some of this --

All right. I'm almost there, your Honor. Due to inconsistencies --

THE COURT: What paragraph are you looking at?

MR. BIGIN: Paragraph 61.

We have "due to inconsistencies noted in the original dataset submitted to the BLA, FDA requested that the applicant, Moderna, complete all data cleaning activities up to June 24th data cutoff and submit updated datasets. The updated datasets submitted to the BLA on February 26, 2024 identified the additional cases with onset prior to the data cutoff, which met the study definition".

So, to us, that's the correction, is inconsistency.

THE COURT: Right, but you have no well-pleaded allegation that FDA ever used the word "corrected" to describe this process.

MR. BIGIN: Just -- just that, just that paragraph.

THE COURT: The word "inconsistency" is the word you're pointing to.

MR. BIGIN: Correct.

Docket No. 91 at 32:24–34:21.

There is no immediate need to include Exhibit 20 in the record at this stage, given counsel's clarification that Plaintiff had—at the time the Complaint was drafted—only limited information about the communications between FDA and Moderna, and given counsel's acknowledgement that the term "corrected" is Plaintiff's own characterization and is not drawn from the FDA's words.

As to the remaining exhibits reflecting communications between the FDA and Moderna, Plaintiff has also posed an authenticity challenge. None of these documents are essential to deciding the motion to dismiss, and, in light of Plaintiff's challenge, they will not be treated as being incorporated in the Complaint.

2. *ConquerRSV Trial Documents*
*(Docket Nos. 72-17 through 72-19)*

Plaintiff objects to these documents primarily on the basis that they are not referenced in the Complaint. Plaintiff also challenges the authenticity of Exhibit 19.

Defendants, to their credit, make a strong argument that, in light of how the briefing has evolved on the motion to dismiss, these documents—the study protocol, statistical analysis plan, and clinical study report—are integral to Plaintiff's claims.

Although there is some merit in Defendants' position, these documents are not so central to the Complaint's allegations as to be properly considered on a motion to dismiss. If the Court is to consider this set of documents, the better course would be to treat the motion to dismiss as a limited motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Here, the Complaint and the indisputably incorporated documents are sufficient to resolve the issues presented on the motion to dismiss.

This set of challenged documents is also excluded.

3. *Third-Party Materials: Clinical Review Memos for Competitors, Medical Journal Publications, Industry Guidance Documents, and Summary of Other Jurisdictions' Labeling Decisions*
*(Docket Nos. 72-32 through 72-37, 72-41)*

Plaintiff contends that these documents lie beyond the boundary of the Complaint and thus shouldn't figure in the 12(b)(6) analysis, while Defendants invoke judicial notice.

On the whole, Plaintiff has the better of the argument. Courts may sometimes take notice of the "fact" that something has been published, without taking notice of the "contents" of such a publication. *See In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, No. 14-cv-13848-NMG, 2015 WL 3751422, at *3 (D. Mass. June 15, 2015) ("When the authenticity of a newspaper article cannot be reasonably questioned, a court may take judicial notice of the fact that the articles were published, without taking judicial notice of the truth of their contents." (citing

*Garber v. Legg Mason Inc.*, 347 F. App'x 665, 669 (2d Cir.2009))). Here, it is plain that Defendants are asking the Court to consider the contents of these publications.

As for the FDA's approval memos relating to other companies' vaccines (Docket Nos. 72-32, 72-33) and industry guidance documents (Docket Nos. 72-36, 72-37), these do not appear to have been published in the Federal Register and are, therefore, not subject to judicial notice on that basis. *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed and without prejudice to any other mode of citation, may be cited by volume and page number."). They are analogous to other published materials, like the *New England Journal of Medicine* publications (Docket Nos. 72-34, 72-35) and will be treated as such.

Defendants' summary (Docket No. 72-41) includes various matters that are not properly before the Court at this stage of litigation and will also be stricken.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Strike (Docket No. 76) is ALLOWED.[2]

/s/ Paul G. Levenson
Paul G. Levenson
CHIEF U.S. MAGISTRATE JUDGE

Dated: August 31, 2026

---

[2] The parties are advised that under Rule 72(a) of the Federal Rules of Civil Procedure and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party seeking review by a district judge of these determination(s) and order(s) must serve and file any objections within fourteen days of being served a copy of this order, unless a different time is prescribed by the magistrate judge or the district judge. *See* Fed. R. Civ. P. 72(a). Such objections must specifically designate the order, or part, to be modified or set aside and the basis for objection. The district judge will set aside any portion of the magistrate judge's order that is found to be clearly erroneous or contrary to law. The parties are further advised that failing to follow the objection procedures of Rule 2(b) may preclude further appellate review. *See Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999); *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964–65 (1st Cir. 1997).