UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MASON WENTZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MODERNA, INC., et al.,<br><br>Defendants. | * * * * * * * * * * | Civil Action No. 1:24-cv-12058-IT |

MEMORANDUM & ORDER

October 8, 2026

TALWANI, D.J.

Lead Plaintiff Pak Sa Kim brings this putative securities class action suit against Defendants Moderna, Inc., and its executives Stephane Bancel, James Mock, and Stephen Hoge (collectively "Moderna"), alleging that they violated the Securities Exchange Act by misrepresenting the efficacy rate of a vaccine product. Am. Compl. ¶¶ 3–14 [Doc. No. 62]. Lead Plaintiff has alleged that, despite the Food and Drug Administration's ("FDA") approval of the product based on a 78.7% efficacy rate, Moderna intentionally misstated that its vaccine was 83.7% effective, thereby artificially inflating stock prices. Id. at ¶¶ 3–14, 130.

Moderna filed a Motion to Dismiss [Doc. No. 71] and over forty exhibits in support thereof. See Rosenfeld Decl. [Doc. No. 72]. Lead Plaintiff opposed Moderna's motion and moved to strike certain of Moderna's supporting exhibits. Opp'n [Doc. No. 75]; Pl.'s Mot. to Strike [Doc. No. 76]. This court referred Lead Plaintiff's Motion to Strike [Doc. No. 76] to the Magistrate Judge for decision and Moderna's Motion to Dismiss [Doc. No. 71] for a Report and Recommendation. Elec. Order [Doc. No. 87].

The Magistrate Judge allowed Lead Plaintiff's Motion to Strike [Doc. No. 76], finding that the challenged exhibits were not incorporated by reference into the Amended Complaint [Doc. No. 62]. Order on Mot. to Strike 5–7 [Doc. No. 93]. As to Moderna's Motion to Dismiss [Doc. No. 71], the Magistrate Judge recommended finding that Lead Plaintiff had "plausibly allege[d] that it was inaccurate [for Moderna] to continue to publicize the 83.7% figure, while omitting to mention that updated data pointed to a lower figure." R.&R. 26 [Doc. No. 94]. However, the Magistrate Judge also recommended dismissal of the Amended Complaint [Doc. No. 62] despite the alleged misleading omission, on the ground that Lead Plaintiff had failed to adequately plead scienter. R.&R. 48–49 [Doc. No. 94] ("Because the factual allegations of the Complaint lend more support to an innocent explanation than one of scienter, Plaintiff has failed under the PSLRA to allege a viable Section 10(b)/Rule 10b-5 claim.").

The parties filed objections and replies. Def.'s Obj. to Order [Doc. No. 96]; Def.'s Obj. to R.&R. [Doc. No. 98]; Pl.'s Obj. to R.&R. [Doc. No. 99]; Pl.'s Reply [Doc. No. 101]; Def.'s Reply [Doc. No. 102].

For the reasons discussed below, on *de novo* review, the court overrules Lead Plaintiff's objections, ADOPTS the Magistrate Judge's Report & Recommendation [Doc. No. 94] as to the failure to adequately plead scienter, and DISMISSES the Amended Complaint [Doc. No. 62].

## I. Background

The court adopts, and incorporates by reference, the background set forth in the Report & Recommendation [Doc. No. 94]. See id. at 3–10.

## II. Standard of Review

### A. Report and Recommendation

Following the issuance of a Report and Recommendation, the court reviews *de novo* the matters delimited by timely[1] and appropriately specific objections. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3); see United States v. J.C.D., 861 F.3d 1, 5 n.1 (1st Cir. 2017). The court thereafter "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### B. Motion to Dismiss

When evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"Exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6)." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (quotations omitted). In ruling on a motion to dismiss, "a judge can mull

---

[1] An objection is timely if filed within 14 days of receipt of the Magistrate Judge's Report and Recommendation. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).

over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (alteration in original) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)). A court may consider extrinsic documents "without converting the motion into one for summary judgment" where "the relevant entirety of a document [is] integral to or explicitly relied upon in the complaint" and thus incorporated by reference. Clorox Co. P.R. v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000) (quotation omitted).

C. Securities Fraud

Securities fraud allegations are held to heightened pleading requirements under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). 15 U.S.C. § 78u–4(b)(2); N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009); see In re Boston Sci. Corp. Sec. Litig., 686 F.3d 21, 27, 30 (1st Cir. 2012). As with all allegations of fraud, a complaint must be dismissed unless it "state[s] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2); see Thant v. Karyopharm Therapeutics Inc., 43 F.4th 214, 222 (1st Cir. 2022).

Liability under Section 10(b) and Rule 10b-5 requires scienter. See 15 U.S.C. § 78u-4(b)(2). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 48 (2011) (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976)). It requires "a showing of either conscious intent to defraud or 'a high degree of recklessness.'" ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008) (quoting Aldridge v. A.T. Cross Corp., 284 F.3d 72, 82 (1st Cir. 2002)). A high degree of recklessness "demands 'a highly unreasonable omission,' one that not only involves 'an extreme

departure from the standards of ordinary care,' but also 'presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it.'" Corban v. Sarepta Therapeutics, Inc., 868 F.3d 31, 37 (1st Cir. 2017) (quoting In re Smith & Wesson Holding Corp. Sec. Litig., 669 F.3d 68, 77 (1st Cir. 2012)).

Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2). To qualify as "strong," the Supreme Court has instructed that "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 314 (2007). When there are equally strong inferences for and against scienter, "the draw is awarded to the plaintiff." City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp., 632 F.3d 751, 757 (1st Cir. 2011). "[W]here a complaint is devoid of any direct-evidence allegations, the indirect-evidence allegations in the complaint will need to do more work to carry the burden of raising a 'strong inference of scienter' on their own." Brennan v. Zafgen, Inc., 853 F.3d 606, 615 n.8 (1st Cir. 2017). Cognizant that "[e]ach individual fact about scienter may provide only a brushstroke," courts must assess each asserted fact individually before considering "the resulting portrait" and weighing them cumulatively. Loc. No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc., 838 F.3d 76, 81 (1st Cir. 2016) (quoting In re Cabletron Sys., Inc., 311 F.3d 11, 40 (1st Cir. 2002)). "[A] plaintiff 'may combine various facts and circumstances indicating fraudulent intent,' including those demonstrating 'motive and opportunity,' to satisfy the scienter requirement." Brennan, 853 F.3d at 614 (citation modified) (quoting Aldridge, 284 F.3d at 82). "However, 'catch-all allegations' which merely assert motive and opportunity, without something more, fail to satisfy

the PSLRA." In re Cabletron Sys., Inc., 311 F.3d at 39 (quoting In re Advanta Corp. Secs. Litig., 180 F.3d 525, 535 (3rd Cir. 1999)).

## III. Discussion

Lead Plaintiff has failed to clear the high bar for pleading scienter. The Magistrate Judge reported that the Amended Complaint

> includes no well-pleaded factual allegations to suggest that [Moderna] actually believed during the Class Period that the lower efficacy figure was the correct one, or even that it was the figure that the FDA would ultimately adopt. Still less is there any compelling inference that [Moderna] had any motive to lie about it.

R.&R. 29 [Doc. No. 94]. This court agrees. Lead Plaintiff has alleged no facts from which the court may infer that Moderna knew or recklessly disregarded that the 83.7% efficacy figure was materially false during the class period. See In re Cabletron, 311 F.3d at 40.

As the Magistrate Judge correctly noted, "the only thing to support an inference that [Moderna] knew the original figure was inaccurate is the bare fact that they had assembled data that yielded a different, lower figure[.]" R.&R. 30 [Doc. No. 94] (emphasis in original). But it would be unreasonable to infer from this fact that Moderna "understood that only the lower efficacy figure was accurate, or even that [Moderna] anticipated the FDA would adopt the lower figure." Id. (emphasis in original).

The court considers Lead Plaintiff's objections to the Report & Recommendation [Doc. No. 94] in turn.

### A. *FDA May 29, 2024 Memorandum*

Lead Plaintiff argues that this court should interpret the FDA's January 25, 2024 request for updated data as "the FDA rejecting the original primary analysis dataset as complete[.]" Pls.' Obj. to R.&R. 4 [Doc. No. 99]. Lead Plaintiff relies on the following portion of the FDA's May 29, 2024 BLA Clinical Review Memorandum for support:

> On January 25, 2024, due to inconsistencies in the datasets submitted for [the ConquerRSV Trial], FDA requested that the Applicant complete all data cleaning activities up to the June 24, 2023 data cutoff and submit updated datasets for FDA review. The updated data were used in the primary and additional efficacy analyses and identified additional RSV cases with onset prior to data cutoff which met the study case definition. The additional identified cases were incorporated into the estimates of vaccine efficacy in this review memorandum.

Bigin Aff. Ex. 2, at 3 [Doc. No. 74-2] ("May 29, 2024 FDA Clinical Review Memo").[2] Lead Plaintiff argues that, because the FDA referred to "inconsistencies in the datasets," Moderna was on notice as of January 25, 2024, that the FDA viewed its vaccine efficacy rate as inaccurate. Pls.' Obj. to R.&R. 4, 8–9 [Doc. No. 99].

However, as the Magistrate Judge explained, the FDA document identifies the January 2024 request, but not its content. R.&R. 16 [Doc. No. 94]. The document does not state that the FDA communicated to Moderna any characterization of the data the company previously provided, only that the FDA requested "updated datasets" from Moderna. May 29, 2024 FDA Clinical Review Memo 3 [Doc. No. 74-2]. Accordingly, the court may not infer from the request as described in the FDA document that Moderna knew the FDA would determine efficacy based on the updated and expanded data Moderna provided in February 2024. See R.&R. 16 [Doc. No. 94] ("[T]here are no factual allegations in the Complaint that the FDA used the term 'inconsistencies' in the January 2024 communication when it requested the additional data."); see also In re TransMedics Grp., Inc. Sec. Litig., No. 1:25-cv-10385-LTS, __ F. Supp. 3d __, 2026 WL 2098148, at *21 (D. Mass. July 21, 2026) (in finding no scienter, court explained that while timing of CEO's stock sales may have raised an inference that he was aware of company's poor performance during the quarter, they did not suggest he specifically knew that pricing pressure or competitive dynamics contributed to company's declining revenue).

[2] This document is quoted in the Amended Complaint [Doc. No. 62] and may therefore be incorporated by reference into the pleading. See id. ¶ 57; Clorox Co. P.R., 228 F.3d at 32.

B. *President Hoge's June 10, 2024 Statement*

Lead Plaintiff also argues that Moderna President Steven Hoge's June 10, 2024 statement constitutes an admission that Moderna knew the FDA would approve mRESVIA at the 78.7% efficacy rate. Pls.' Obj. to R.&R. 10–11 [Doc. No. 99].[3] Specifically, Lead Plaintiff asserts that the Magistrate Judge failed to appropriately take into account Hoge's statement that "we ultimately agreed with the [FDA] to include" the additional cases as updated data. Id. at 11; Company Conference Presentation Tr. ECF 3 [Doc. No. 72-16]. Lead Plaintiff argues that "Moderna's agreement with the FDA shows that Moderna knew the FDA would not approve the 83.7% [vaccine efficacy] rate that [Moderna] continued to tout during the Class Period." Pls.' Obj. to R.&R. 12 [Doc. No. 99].

[3] On June 10, 2024, Hoge presented at a company conference and discussed the FDA's recent approval of mRESVIA. Am. Compl. ¶ 60 [Doc. No. 62]; Rosenfeld Decl. Ex. 16, at ECF 3 [Doc. No. 72-16] ("Company Conference Presentation Tr."). In explaining the FDA's approval based on the 78.7% efficacy rate, Hoge stated:

> The label data from the FDA approval process was 78.7% efficacy. The prior—the primary analysis, as per protocol, primary analysis had been 83.7%, substantially the same numbers with the same overlap. So what's the different [sic]? During the process of the review with the FDA, they asked us to include a set of cases, about 20 cases that were not confirmed at the time of the primary analysis. So these are people that might have developed a symptom, but at the time of the data cutoff by the DSMB [Data and Safety Monitoring Boards], they had not had a PCR [polymerase chain reaction] confirmation that it was RSV. It could have been COVID, it could have been flu, lots of other things were diagnosed during that time.
>
> When you're running a clinical trial and you're following the protocol, when you hit that data cutoff, we're blinded. We provide the data the DSMB, and that blinded data was 83.7%. But the FDA and regulators have the privilege of being able to look retrospectively and decide if they want to include those numbers. And because it added about 20 more cases to that primary analysis, we ultimately agreed with the agency to include those because they broke 15 and 5, they slightly lowered the number by a couple of percent. But otherwise, it's substantially the same result.

Company Conference Presentation Tr. ECF 3 [Doc. No. 72-16].

As the Magistrate Judge explained, Hoge's statement that Moderna agreed to include the additional data is not equivalent to a statement that "Moderna agreed it was appropriate to include the additional (unblinded) cases, or that it was more accurate to include them, or that the FDA was correct in opting to include them." R.&R. 38 [Doc. No. 94]. Hoge's statement only reflects Moderna's agreement with the FDA's process, rather than any admission that the 83.7% efficacy rate was inaccurate. See In re Boston Scientific Corp. Sec. Litig., 686 F.3d at 31 ("In cases where we have found the pleading standard satisfied, the complaint often contains clear allegations of admissions, internal records or witnessed discussions suggesting that at the time they made the statements claimed to be misleading, the defendant officers were aware that they were withholding vital information or at least were warned by others that this was so."); cf. Aldridge, 284 F.3d at 76, 83 (finding strong inference of scienter where plaintiff pleaded facts including company executive's statement in newspaper and additional evidence that executive knew the statement to be false or misleadingly incomplete at the time of publication).

C. *Motive*

Lead Plaintiff argues that, in reporting no evidence in support of scienter, the Magistrate Judge failed to appropriately consider the Amended Complaint's [Doc. No. 62] allegations regarding Moderna's motive to misrepresent mRESVIA's efficacy. Pls.' Obj. to R.&R. 15–16 [Doc. No. 99]. Lead Plaintiff alleged that the approval of mRESVIA was of particular import to Moderna because the profitability of its first and primary product, a vaccine for COVID-19, had decreased following the abatement of the pandemic. Am. Compl. ¶¶ 3, 114 [Doc. No. 62]. Additionally, Lead Plaintiff alleged that Moderna was specifically motivated to publicize a higher efficacy rate for mRESVIA because in May 2023, the FDA had approved a first market entrant RSV vaccine at an efficacy rate lower than 83.7% but higher than 78.7%. Id. ¶¶ 51, 113,

117. Lead Plaintiff points to allegations in the Amended Complaint [Doc. No. 62] regarding financial analysts' perspectives on the relationship between market entry and market share as support for its contention that Moderna was motivated to misrepresent mRESVIA's efficacy to compensate for its later entry into the market. Id. ¶¶ 39–41.

As the Magistrate Judge explained, Lead Plaintiff's motive allegations are insufficient to permit the court to reasonably infer that Moderna stood to gain so much by a 5% delta in vaccine efficacy such that the company intentionally withheld the figure from investors for three months, knowing that the FDA would ultimately approve the drug based on a lower figure. R.&R. 46–48 [Doc. No. 94]. While Plaintiff has reasonably alleged that Moderna wanted to use the higher number to generally improve revenue and compete with other RSV vaccines, no particularized facts support a reasonable inference that Moderna "was cash-strapped or desperate for new investment" in such a way that a temporary three-month boost in share value was necessary. Id. at 45; cf. In re Cabletron Sys., Inc., 311 F.3d at 39 (finding scienter where complaint alleged with particularity the "concealment of the serious and worsening deterioration of Cabletron's financial health as a significant motive for the alleged fraud").

D. *Core Operations*

Finally,[4] Lead Plaintiff argues that the court should infer that Moderna knew the FDA would approve mRESVIA based on the lower efficacy rate because the approval was part of Moderna's core business operations. Pls.' Obj. to R.&R. 12–13 [Doc. No. 99]. As explained by

---

[4] Lead Plaintiff also objects to the Magistrate Judge's report that the materiality of the vaccine efficacy rate delta undercuts any inferences of scienter, see Pls.' Obj. to R.&R. 13–15 [Doc. No. 99], and that the competing inferences of Moderna's nonactionable conduct are stronger than inferences of scienter, id. at 16–17. But where the court finds no evidence in support of scienter, the court need not consider whether Lead Plaintiff's insufficient showing is further debilitated by undercutting and/or competing inferences.

the Magistrate Judge, a "core operations" theory can be used to plead scienter when bolstered by "other significant evidence of a defendant's intent or recklessness, or a plus factor." R.&R. 42 [Doc. No. 94] (quoting Leung v. bluebird bio, Inc., 599 F. Supp. 3d 49, 66 (D. Mass. 2022)). The court agrees with the Magistrate Judge that Lead Plaintiff has failed to plead sufficient facts regarding Moderna's "intent or recklessness, or [another] plus factor." Id.; see Metzler Asset Mgmt. GmbH v. Kingsley, 928 F.3d 151, 165 (1st Cir. 2019) ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter.") (quotation omitted).

Lead Plaintiff urges the court to consider Hoge's June 10, 2024 statement as evidence sufficient to raise the core operations theory. See Pls.' Obj. to R.&R. 12–13 [Doc. No. 99]. But, as explained above, the court is unable to reasonably construe Hoge's statement as an admission. See supra Part III.C.2. Viewed holistically, Lead Plaintiffs' allegations are distinct from other cases in which courts permitted plaintiffs to rely on the core operations theory to plead scienter. For example, in Olsen v. Agenus Inc., the court found it "reasonable to infer that executives would have knowledge of the associated clinical trials and development activities" where the "company focused exclusively on [the] product" that was the subject of that research and activity. No. 24-cv-12299-AK, 2026 WL 810814, at *11 (D. Mass. Mar. 24, 2026), appeal pending, No. 26-1421 (1st Cir. Apr. 23, 2026). The Olsen court nevertheless found no strong inference of scienter for corporate defendants alleged merely to have had "corporate responsibilities as high-ranking executives." Id. at *13. However, the court found that the applicable core operations theory in conjunction with (1) the company's co-founder's public

misleading omission; and (2) evidence of his knowledge that the statement was misleading, to be cumulatively sufficient to draw a strong inference of scienter for the co-founder. Id. The Amended Complaint [Doc. No. 62] lacks any particularized allegations that Hoge, or any other Moderna employee, "intended to or recklessly disregarded the risk of deceiving investors[,]" such that the core operations theory would be applicable here. Olsen, 2026 WL 810814, at *13.

## IV. Conclusion

For the foregoing reasons, the court overrules Lead Plaintiff's Objections [Doc. No. 99], adopts the Report & Recommendation [Doc. No. 94] insofar as it finds that Lead Plaintiff has failed to plead facts sufficient to raise a strong inference of scienter, and DISMISSES the Amended Complaint [Doc. No. 62].[5]

IT IS SO ORDERED.

October 8, 2026

/s/ Indira Talwani
United States District Judge

[5] The court notes Moderna's Objections [Doc. No. 96] to the Magistrate Judge's Order [Doc. No. 93] granting Lead Plaintiff's Motion to Strike [Doc. No. 76] and Moderna's Partial Objection [Doc. No. 98] to portions of the Report & Recommendation [Doc. No. 94]. These objections are moot where the court has adopted the Magistrate Judge's Report & Recommendation [Doc. No. 94] as to Lead Plaintiff's failure to plead scienter.